Fahed Akram AL JABARI, Plaintiff,

v.

Michael CHERTOFF, Secretary, Department of Homeland Security; Robert Mueller, Director, Federal Bureau of Investigation; Mark Cangemi, District Director, U.S. Immigration and Customs Enforcement; and Michael Mukasey, United States Attorney General, Defendants.

Civil No. 07–2591 (PJS/JJG).

United States District Court,
D. Minnesota.

Jan. 15, 2008.

Marc Prokosch, Karam & Associates, Bloomington, MN, for plaintiff.

Robyn A. Millenacker, Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

PATRICK J. SCHILTZ, District Judge.

Plaintiff Fahed Al Jabari is attempting to become a legal permanent resident of the United States. Before Al Jabari can be granted such status, the federal government must complete certain security checks on him. Al Jabari waited about eighteen months for defendants to complete those security checks and then, losing patience, he brought this action to compel defendants to finish their work. This matter is before the Court on defendants'[1] motion to dismiss or for summary judgment. For the reasons set forth below, the Court grants the motion with respect to Al Jabari's claim under the Mandamus Act, 28 U.S.C. § 1361, and with respect to all claims against FBI Director

Robert Mueller. The Court denies the motion in all other respects.

## I. BACKGROUND

Al Jabari, a citizen of Jordan, first entered the United States in 1993 as a nonimmigrant student. Al Jabari later married a citizen of the United States while in Jordan and, following his marriage, returned to the United States as a conditional permanent resident in June 1999. Administrative Record ("AR") 1 [Docket No. 14]. Conditional permanent residency is the status granted to an alien who is married to a United States citizen, but whose marriage is less than two years old. *See* 8 U.S.C. § 1186a(a)(1), (g)(1).[2] If the alien is to remain in the United States indefinitely, the alien and his citizen-spouse must jointly petition to remove the conditional basis of the alien's permanent residency within a certain time period. § 1186a(c)(1), (d)(2). If no such petition is timely filed, the alien's permanent residency is terminated, and the alien is usually removed from the United States. § 1186a(c)(2). The Attorney General, however, has the discretion to grant a "hardship waiver" of the joint-petition requirement under various circumstances, including if the alien demonstrates that his removal from the United States would cause "extreme hardship." § 1186a(c)(4).

Al Jabari and his wife became estranged shortly after they were married. They did not file a joint petition under § 1186a(c)(1)—presumably because Al Jabari's wife was unwilling to join such a request—and their marriage ultimately ended in divorce in February 2002. Meanwhile, in June 2001, Al Jabari asked the

---

1. Pursuant to Fed.R.Civ.P. 25(d), Attorney General Michael Mukasey is substituted as a defendant for his predecessor, Alberto Gonzales.

2. Unless otherwise noted, all statutory citations are to Title 8 of the United States Code.

Attorney General to grant him a hardship waiver of the joint-petition requirement. AR 7, 208–211. After reviewing the materials Al Jabari submitted with his request, United States Citizenship and Immigration Services ("USCIS") concluded that Al Jabari's marriage was a sham—a marriage that Al Jabari entered solely to obtain permanent residency in the United States. AR 210. In September 2004, USCIS denied Al Jabari's § 1186a(c)(4) petition for a hardship waiver, terminated his permanent residency, and began removal proceedings against him. AR 3, 7. In the removal proceedings, Al Jabari renewed his hardship petition and requested review of the termination of his permanent residency in accordance with § 1186a(b)(2). Third Millenacker Decl. Ex. CC [Docket No. 21].

The evidentiary record on Al Jabari's renewed hardship petition closed in April 2006. Third Millenacker Decl. Ex. CC. The Immigration Judge ("IJ") has not yet issued a decision, however, because federal regulations preclude the lifting of conditions on permanent residency before required security checks are completed. 8 C.F.R. § 1003.47(b)(4), (g). Although the briefing is not entirely clear, it appears that the only remaining security check to be completed on Al Jabari is a "name check."

A name check is a multi-step process in which the FBI searches its files for information linked to a particular name and other associated identification information, such as birthdate or social security number. Cannon Decl. ¶¶ 11, 13, 21 [Docket No. 9]. If any unfavorable information is found, the FBI forwards a summary of the information to USCIS. Cannon Decl. ¶ 17. The vast majority of name checks that the FBI conducts for USCIS yield no information at all; less than one percent of name checks retrieve possible unfavorable information. Cannon Decl. ¶¶ 13–14, 17.

Generally, the FBI processes name checks in the order in which requests are received, but USCIS can direct that a particular name check be expedited, in which case it is moved to the front of the queue. Cannon Decl. ¶ 18. The FBI has no statutory duty to conduct name checks for USCIS, but instead does so pursuant to a contract with the agency. *See Konchitsky v. Chertoff*, No. 07–294, 2007 WL 2070325, at *5–6 (N.D.Cal. July 13, 2007). USCIS submitted a name-check request for Al Jabari on January 10, 2006—more than two years ago. Cannon Decl. ¶ 39. The FBI has yet to complete the check. Cannon Decl. ¶ 39.

Frustrated with the wait, and believing that the IJ will grant his petition as soon as the name check is completed, Al Jabari initiated this action in June 2007 seeking to compel the completion of his security check.[3] Al Jabari argues that he is entitled to relief under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq. Defendants move to dismiss or for summary judgment, arguing that the Court lacks jurisdiction over Al Jabari's claims and, on the merits, arguing that the delay in completing his security check is reasonable.[4]

3. At oral argument, Al Jabari conceded that because no statute or regulation imposes on the FBI a duty to complete his name check, the Court cannot enter an order against the FBI. The Court will therefore grant defendants' motion to dismiss with respect to FBI Director Robert Mueller.

4. Shortly after briefing on defendants' motion was complete, the IJ granted USCIS's request to reopen the record to consider additional evidence from Al Jabari's ex-wife. Third Millenacker Decl. Ex. CC. Defendants argue that, because the IJ may deny Al Jabari relief on the basis of the new evidence without waiting for completion of the name check, this case

## II. ANALYSIS

### A. Mandamus Act

■■■ The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The Act does not itself waive sovereign immunity. *Essex v. Vinal,* 499 F.2d 226, 231–32 (8th Cir.1974). But under what is known as the *Larson–Dugan* exception to sovereign immunity, *see Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 689, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *Dugan v. Rank,* 372 U.S. 609, 621–22, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), no waiver of sovereign immunity is necessary when "a plaintiff seeks a writ of mandamus to force a public official to perform a duty imposed upon him in his official capacity...." *Wash. Legal Found. v. U.S. Sentencing Comm'n,* 89 F.3d 897, 901 (D.C.Cir.1996). The rationale of the *Larson–Dugan* exception to sovereign immunity was described by the Supreme Court as follows:

There may be, of course, suits for specific relief against officers of the sovereign which are not suits against the sovereign.... [W]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are *ultra vires* his authority and therefore may be made the object of specific relief.

*Larson,* 337 U.S. at 689, 69 S.Ct. 1457.

■■■ For mandamus to issue under 28 U.S.C. § 1361, the plaintiff must have a clear and indisputable right to the relief sought, the defendant must have a non-discretionary duty to honor that right, and the plaintiff must have no other adequate remedy. *Castillo v. Ridge,* 445 F.3d 1057, 1060–61 (8th Cir.2006). Al Jabari alleges that he has a clear and indisputable right to a prompt security check—and that DHS has a non-discretionary duty to provide a prompt security check—under 8 C.F.R. § 1003.47(e). That regulation provides:

DHS shall endeavor to initiate all relevant identity, law enforcement, or security investigations or examinations concerning the alien or beneficiaries promptly, to complete those investigations or examinations as promptly as is practicable (considering, among other things, increased demands placed upon such investigations), and to advise the immigration judge of the results in a timely manner, on or before the date of a scheduled hearing on any application for immigration relief filed in the proceedings.

■■■ The Court agrees with Al Jabari that, under § 1003.47(e), DHS has a non-discretionary duty to initiate and complete *a* security check. Thus, if DHS had refused to conduct any security check on Al Jabari, he would be entitled to relief under the Mandamus Act.[5] But the Court cannot agree with Al Jabari that § 1003.47(e) im-

---

could become moot. This case is not moot now, however. Given that defendants' motion has been fully briefed and argued, and given that the motion mainly concerns the threshold issue of jurisdiction, the Court will proceed to resolve it.

5. Defendants resist even this conclusion, arguing that, because only the FBI can conduct a name check, a writ of mandamus would not lie against DHS. But § 1003.47(e) imposes the duty to initiate and complete security checks on DHS, not on the FBI, and DHS cannot, by entering into a contract with the FBI, "shift responsibility for its breach of duty to the FBI...." *Konchitsky,* No. 07–294, 2007 WL 2070325, at *5.

poses on DHS a non-discretionary duty to complete a *prompt* security check. The regulation merely requires DHS to "endeavor ... to complete those investigations or examinations as promptly as is practicable (considering, among other things, increased demands placed upon such investigations)...." This is not the language of prescription, but of aspiration.

If the regulation said something like "DHS shall complete all relevant security investigations concerning the alien within 120 days," then the regulation would impose a non-discretionary duty on DHS. But the regulation instead directs DHS to "endeavor"—that is, to *try*—to complete the security check "as promptly as is practicable." This standard, unlike "within 120 days," is both vague (what is "promptly"?) and inevitably requires the exercise of judgment (how much promptness is "practicable"?). As if to emphasize the discretionary nature of the duty, the regulation goes on to point out that multiple factors will inform the DHS's decision about how much promptness is "practicable," including "increased demands placed upon such investigations."

At bottom, the regulation simply says to DHS: "You should try to complete the security check as quickly as is practicable, given all of the other demands on your resources." This does not impose the type of clear, indisputable, non-discretionary duty that can be enforced under the Mandamus Act. Defendants' motion to dismiss or for summary judgment is therefore granted with respect to Al Jabari's request for a writ of mandamus compelling defendants to complete the security check "promptly."

### B. APA

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "Agency action" includes the failure of an agency to act. 5 U.S.C. § 551(13); *Kenney v. Glickman*, 96 F.3d 1118, 1122 n. 3 (8th Cir. 1996). District courts have jurisdiction under 28 U.S.C. § 1331 to hear actions seeking relief under 5 U.S.C. § 702. *Black Hills Inst. of Geo. Research v. S.D. Sch. of Mines & Tech.*, 12 F.3d 737, 740 (8th Cir. 1993). Moreover, 5 U.S.C. § 702 waives sovereign immunity for actions "seeking relief other than money damages...." 5 U.S.C. § 702; *Black Hills Inst. of Geo. Research*, 12 F.3d at 740.

The APA explicitly gives courts the authority to "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1). To be entitled to such relief, a plaintiff must establish that the agency has a non-discretionary duty to act. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63–64, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004). As noted, the Court agrees with Al Jabari that 8 C.F.R. § 1003.47(e) imposes a non-discretionary duty on DHS to do *a* security check on Al Jabari. Defendants argue that § 1003.47(e) does not require DHS to complete the security check by a particular date, but the APA itself imposes a duty on agencies to act within a reasonable time: "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099–1100 (D.C.Cir.2003). In sum, § 1003.47(e) imposes on DHS the duty to complete Al Jabari's security check, and § 555(b) imposes on DHS the duty to complete Al Jabari's security check within a reasonable time. Thus, the question for the Court is whether DHS has, in fact, unreasonably delayed Al Jabari's security check.

Defendants contend that the Court cannot reach this question because, according to defendants, the Court is divested of jurisdiction over Al Jabari's APA claim by virtue of §§ 1252(a)(2)(B), 1252(g), and 1252(b)(9). The Court considers each provision in turn.[6]

### 1. Section 1252(a)(2)(B)

Section 1252(a)(2)(B), which is entitled "Denials of discretionary relief," states, in relevant part:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title ... and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security....

The decision whether to grant or deny a hardship waiver to Al Jabari under § 1186a(c)(4) is plainly within the discretion of the Attorney General. Because the decision itself is discretionary, defendants argue, the manner in which the decision is made, including the *timing* of the decision,

is also discretionary. Thus, according to defendants, the timing of the decision is itself an "action of the Attorney General ... the authority for which is specified under this subchapter to be in the discretion of the Attorney General," making the timing of the decision unreviewable under § 1252(a)(2)(B).

██ The Court disagrees. The Attorney General has discretion to grant or deny a request for a hardship waiver. But the Attorney General does not have discretion to refuse to act on a request for a hardship waiver. In other words, the Attorney General has discretion over what a decision will be, but not over whether a decision will be made; the Attorney General does not have discretion to refuse to exercise his discretion. *See Saleem v. Keisler*, 520 F.Supp.2d 1048, 1054 (W.D.Wis.2007) ("a right to request relief inherently implies a corresponding obligation to respond"); *Asrani v. Chertoff*, No. 07–1673, 2007 WL 3521366, at *3 (D.Minn. Nov. 14, 2007) (explaining the difference between the discretion to grant or deny relief and the non-discretionary duty to make a decision); *Konchitsky*, No. 07–294, 2007 WL 2070325, at *3 (same); *Haidari v. Frazier*, No. 06–3215, 2006 WL 3544922, at *4 (D.Minn. Dec. 8, 2006) (same); *see also S. Utah Wilderness Alliance*, 542 U.S. at 65, 124 S.Ct. 2373 ("when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be"); *Iddir v. INS*, 301 F.3d 492 (7th Cir.2002) (noting the distinction between a

---

**6.** Defendants also argue that the APA never applies to immigration proceedings, citing *Marcello v. Bonds*, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955). *Marcello* does not stand for such a broad principle. As the Eighth Circuit recently noted, the APA in some instances empowers district courts to review certain orders of the Board of Immi-

gration Appeals. *See Ikenokwalu–White v. Gonzales*, 495 F.3d 919, 925–26 (8th Cir. 2007). More importantly, Al Jabari is not using the APA to gain district-court review of the merits of a decision reached in an immigration proceeding; he is instead using the APA to seek an order compelling defendants to complete a security check.

discretionary action or decision and the failure to take an action or make a decision, and holding that § 1252(a)(2)(B) did not bar review of the latter).

Moreover, as other courts have noted, § 1252(a)(2)(B) does not shield all discretionary decisions from review, but instead quite specifically divests jurisdiction over decisions or actions "the authority for which is specified *under this subchapter* to be in the discretion of the Attorney General . . . ." (emphasis added). Defendants do not identify any provision of the relevant subchapter that "specifie[s]" that the Attorney General has discretion over the *pace* of his decision making. *Cf. Han Cao v. Upchurch*, 496 F.Supp.2d 569, 573 (E.D.Pa.2007) (because statute under which plaintiffs sought adjustment of status was silent with respect to the pace of adjudication, § 1252(a)(2)(B) did not divest the court of jurisdiction); *Sawad v. Frazier*, No. 07–1721, 2007 WL 2973833, at *2 (D.Minn. Oct. 9, 2007) (same).

Finally, the title of § 1252(a)(2)(B), "*Denials* of discretionary relief," confirms that the provision was not intended to sweep as broadly as defendants contend. *See Konchitsky*, No. 07–294, 2007 WL 2070325, at *3. The Court does indeed lack jurisdiction to review a denial of discretionary relief. But failing to make a decision—any decision—is not the same as deciding to deny relief. The Court therefore concludes that § 1252(a)(2)(B) does not divest it of jurisdiction over Al Jabari's APA claim.

### 2. Section 1252(g)

Defendants next argue that the Court lacks jurisdiction under § 1252(g). That provision states as follows:

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

The Supreme Court has explained that § 1252(g) deprives courts of jurisdiction only over claims that arise from one of three discrete "decisions or actions" that the Attorney General may take in the course of removal proceedings: the decision or action to (1) commence removal proceedings, (2) adjudicate removal proceedings, or (3) execute removal orders. *Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) ("*AAADC*"). In the past, the Attorney General sometimes exercised his or her discretion to abandon removal proceedings at one of these junctures, whether for humanitarian or other reasons. *Id.* at 483–84, 119 S.Ct. 936. For example, the Attorney General might decide not to execute an order of removal against an alien because the alien was terminally ill. This practice gave rise to litigation in cases in which the Attorney General did not abandon removal proceedings. *Id.* at 484–85, 119 S.Ct. 936. The purpose of § 1252(g), the Supreme Court explained, was to shield this and similar exercises of discretion from judicial review—that is, to prevent courts from reviewing decisions of the Attorney General *not* to abandon removal proceedings.[7] *Id.* at 485, 119 S.Ct. 936.

---

7. Defendants point out that § 1252(g) has been amended since *AAADC* was decided, but the amendment, which was designed to overrule the result in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), is not relevant to the issues in this case. *See* Millenacker Supp. Decl. Ex. A (legislative history of the REAL ID Act of 2005) [Docket No. 23].

■ Citing *AAADC*, the Eighth Circuit held in *Sabhari v. Reno* that § 1252(g) has no application outside the removal context. 197 F.3d 938, 942 (8th Cir.1999). Specifically, the Eighth Circuit explained that, "because Sabhari's petition for adjustment of status is separate and distinct from any matter related to an order of deportation, § 1252(g) has nothing to do with the present case." *Id.* (citation and quotations omitted). Precisely the same can be said of Al Jabari's case. Thus, under *Sabhari*, § 1252(g) does not apply to Al Jabari's attempt to gain an adjustment of status from conditional permanent residency to unconditional permanent residency.[8]

It is true, of course, that consideration of Al Jabari's hardship petition and review of the termination of his permanent-resident status are taking place in the context of a removal proceeding. *See* § 1186a(b)(2) (permitting an alien whose marriage is determined to be a sham to obtain review of that determination in removal proceedings); *see also* 8 C.F.R. § 216.5(f) (no right to seek review of denial of § 1186a(c)(4) hardship petition except in removal proceedings). But as the Supreme Court made clear in *AAADC*, § 1252(g) does not apply to every decision or action that has some connection to a removal proceeding:

> [§ 1252(g)] applies only to three discrete actions that the Attorney General may take: her "decision or action" to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." (Emphasis added.) There are of course many other decisions or actions that may be part of the deportation process—such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order.
>
> It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.

*AAADC*, 525 U.S. at 482, 119 S.Ct. 936.

Al Jabari's claim in this case—that DHS has unreasonably delayed his security check—did not "aris[e] from" the "decision or action" of the Attorney General to commence removal proceedings against Al Jabari, to adjudicate Al Jabari's removal case, or to execute an order of removal against Al Jabari. Long before removal proceedings were commenced against him, Al Jabari filed a § 1186a(c)(4) petition for a hardship waiver. Thus, whether or not removal proceedings were ever commenced against Al Jabari, DHS would have had the duty to complete a security check on him under 8 C.F.R. § 1003.47(e). Obviously, then, the claim in this case, like the claim in *Sabhari*, arose from the original hardship petition and not from removal proceedings.[9] As a result, § 1252(g) does

---

8. Defendants argue that this case is similar to *Sharif ex rel. Sharif v. Ashcroft*, 280 F.3d 786 (7th Cir.2002), in which the Seventh Circuit held that the district court lacked jurisdiction to stay removal. But that type of claim "aris[es] from the decision or action by the Attorney General to ... execute removal orders," and thus jurisdiction was plainly precluded under § 1252(g). Unlike the plaintiffs in *Sharif*, Al Jabari is not seeking to interfere with any attempt to execute a removal order.

9. Although the Eighth Circuit made no mention of the fact in its opinion in *Sabhari*, the alien spouse in that case was, like Al Jabari, placed in removal proceedings after his marriage to a United States citizen was determined to be a sham. *See* Brief of Appellees at 11, *Sabhari v. Reno*, 197 F.3d 938 (8th Cir. 1999) (No. 98–3843; brief filed Mar. 22, 1999). Yet the Eighth Circuit squarely held that because that spouse's "petition for adjustment of status is separate and distinct from any matter related to an order of depor-

not bar judicial review.

Even if § 1252(g) could be read to apply to claims arising from adjustment-of-status petitions—rather than just to claims arising from removal proceedings—Al Jabari's claim in this case still would not fall within § 1252(g)'s jurisdictional prohibition. Section 1252(g) applies only to causes or claims arising out of a "decision or action." But, as discussed above, Al Jabari is not seeking review of a decision or action; to the contrary, he is asking that DHS be ordered to *make* a decision or *take* an action. Although some statutes (such as the APA) expressly define "action" to include the failure to act, the normal understanding of the word "action" does not encompass inaction. *See Saleem,* 520 F.Supp.2d at 1052 ("no matter how narrowly a court defines 'action,' it would be an Orwellian twisting of the word to conclude that it means a failure to adjudicate").

■■■■ As a general rule, there is a strong presumption in favor of judicial review of administrative action. *Ismailov v. Reno,* 263 F.3d 851, 854 (8th Cir.2001). Moreover, ambiguities in removal statutes are normally construed in favor of the alien. *See Naderpour v. INS,* 52 F.3d 731, 733 (8th Cir.1995) (citing *INS v. Cardoza–Fonseca,* 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). In light of these principles, the Court concludes that § 1252(g)'s preclusion of judicial review of the Attorney General's "decision or action" to grant or deny Al Jabari's hardship waiver does not preclude review of DHS's *failure* to make a decision or take an action that is a prerequisite to the grant of such a waiver. Specifically, the Court concludes that § 1252(g) does not divest it of jurisdiction over Al Jabari's claim under the APA that DHS has "unlawfully withheld or

unreasonably delayed" his security check. 5 U.S.C. § 706(1).

### 3. Section 1252(b)(9)

Finally, citing § 1252(b)(9), defendants contend that the overall "statutory scheme" of § 1252 precludes piecemeal review of immigration proceedings in district courts and instead consolidates review of all such proceedings in the courts of appeals. Section 1252(b)(9) provides that "[j]udicial review of all questions of law and fact ... arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." § 1252(b)(9).

■■■■ Unfortunately for defendants, § 1252 is entitled "Judicial review of orders of removal," and no such judicial review is being sought in this case. Moreover, the claim that Al Jabari makes here—that DHS should be ordered to complete the security check without unreasonable delay—can by definition never be made on review of a final order of removal. As Al Jabari points out, he is not in any way collaterally attacking or circumventing the administrative process; he is trying to get DHS to *complete* the process. Finally, the Court has already concluded that the questions of law and fact in this case are separate from Al Jabari's removal proceeding and thus do not "aris[e] from any action taken or proceeding brought to remove an alien...." For these reasons, § 1252(b)(9) does not bar Al Jabari's APA claim.

### 4. Unlawfully Withheld or Unreasonably Delayed

Turning to the merits of Al Jabari's APA claim, defendants argue that sum-

tation, § 1252(g) has nothing to do with the present case." *Sabhari,* 197 F.3d at 942.

mary judgment is appropriate because the two-year (and counting) delay in completing Al Jabari's name check is reasonable for purposes of the APA. 5 U.S.C. § 706(1). Al Jabari, of course, argues that the delay is unreasonable.

 The Court has *no idea who is correct.* As many courts have emphasized, determining whether an agency action has been unreasonably delayed within the meaning of the APA is fact-intensive inquiry. *See Sawad,* No. 07–1721, 2007 WL 2973833, at *4–5; *Haidari,* No. 06–3215, 2006 WL 3544922, at *5. The Court cannot assess whether the delay in this case is unreasonable without considering a number of factors, including the length of the delay, the complexity of the investigation, the relative fault of the parties in causing the delay, the number and nature of the other demands on DHS and the FBI, the effect that compelling action will have on the parties and others, and the nature and extent of the interests prejudiced by delay. *See Sawad,* No. 07–1721, 2007 WL 2973833, at *5; *Saleem,* 520 F.Supp.2d at 1058–59. The record does not contain nearly enough evidence to permit the Court to weigh these factors, and thus the Court will not enter judgment for either party on the issue of the reasonableness of the delay.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss or for summary judgment [Docket No. 5] is GRANTED IN PART and DENIED IN PART.
   a. Defendants' motion is GRANTED with respect to plaintiff's claims under the Mandamus Act and plaintiff's claims against FBI Director Robert Mueller. Those claims are DISMISSED WITH PREJUDICE AND ON THE MERITS.
   b. Defendants' motion is DENIED in all other respects.
2. Pursuant to Fed.R.Civ.P. 25(d), Attorney General Michael Mukasey is substituted as a defendant for his predecessor Alberto Gonzales.