# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3920

_____

Edy Uzor Ikenokwalu-White,    *
              *
     Petitioner,    *
              *
  v.          *
              *
Alberto Gonzales,  United States  *
Attorney General,     *
              *
     Respondent.  *

_____

No. 06-2861

_____

                Petitions for Review of Orders
                of the Board of Immigration
                Appeals.

Chy Chy Ikenokwalu,    *
              *
     Petitioner,    *
              *
  v.          *
              *
Alberto Gonzales, United States  *
Attorney General; Bureau of Citizenship *
and Immigration Services, Department *
of Homeland Security,    *
              *
     Respondents.  *

_____

Submitted: February 14, 2007
Filed: July 9, 2007

_____

Before RILEY, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

This appeal is another chapter in the thirty-year history of immigration proceedings involving Edy Uzor Ikenokwalu-White ("Edy"). Specifically, this appeal involves the somewhat confusing intersection between Edy's own ongoing efforts to avoid removal to Nigeria and the separate efforts of her United States citizen son, Chy Chy Ikenokwalu ("Chy Chy"), to secure an immediate relative visa on her behalf. Because common issues arise at the intersection of these separate proceedings, and because Edy's proceedings were reopened by the Board of Immigration Appeals ("Board") based on developments in Chy Chy's separate proceedings, we have consolidated Edy's and Chy Chy's appeals.

I.      Background

Although Edy entered the United States in 1977 and has changed status numerous times (including twice being awarded permanent resident status and twice having that status revoked), we do not review the entirety of her saga in this opinion. Rather, we begin our discussion of Edy and Chy Chy's cases in 2001. We note, however, that decisions subsequent to 2001 are related to a 1986 Board determination that resulted in a revocation of permanent resident status for Edy. In that 1986 decision, the Board found that Edy had entered into a "sham" marriage with William Horton, a man of purportedly diminished mental capacity, in order to secure immigration benefits.

Chy Chy instituted proceedings to obtain a visa for Edy on April 25, 2001, by filing an I-130 petition for an immediate relative visa listing Edy as the beneficiary. At that time, in Edy's own proceedings, there was pending before the Board an appeal from an immigration judge's ("IJ") decision finding Edy removable and denying her

requests for a stay of deportation or voluntary departure. On September 1, 2001, the Immigration and Naturalization Service ("Service")[1] in Chy Chy's case initially granted Chy Chy's petition to obtain an immediate relative visa for Edy. On December 14, 2001, the Board in Edy's case affirmed the IJ's denial of relief, finding that Edy was removable to Nigeria and ineligible for voluntary departure or suspension of deportation because she failed to establish that she was of good moral character. In the December 14, 2001 decision, the Board referenced the fact that Edy had unsuccessfully attempted to marry a seventeen-year-old man in the early 1980s and had subsequently entered into a sham marriage with William Horton (the man with diminished mental capacity) in order to secure immigration benefits. Edy filed a notice of appeal with our court on January 14, 2002.

On May 1, 2002, the Service in Chy Chy's case provided Chy Chy with a notice of intention to revoke the previously granted immediate relative petition for Edy based on the information about the sham marriage that was revealed in the December 14, 2001 Board decision in Edy's case. On July 1, 2002, counsel for Chy Chy submitted a letter to the Service in response to the notice of intention to revoke. Included with the letter were various affidavits, documents, and reports purporting to demonstrate that Edy's marriage to William Horton had not been a sham marriage. Also included was the result of a polygraph examination dated June 18, 2002 in which Edy answered five questions regarding the legitimacy of her marriage to William Horton.

On November 8, 2002, Edy's appeal from the Board decision in her own case was submitted to a panel of our court for consideration. On January 21, 2003, we affirmed the Board's finding of removability, denial of voluntary departure, and denial

_____

[1] Although the Immigration and Naturalization Service is no longer so named, and its functions are now within the Department of Homeland Security, Edy entered the United States in 1977 and has a long history with the Service. As such, for convenience, we refer in this opinion to the relevant governmental agencies as the Service.

of suspension of deportation. See Ikenokwalu-White v. INS, 316 F.3d 798 (8th Cir. 2003). In our opinion, we noted that Edy had pending before the Board a motion to reopen. She requested that we take judicial notice of her pending motion to reopen or otherwise accept documents related to her motion. We declined to do so because her motion was not part of the administrative record before our court. Id. at 805 n.10 ("The materials and arguments advanced by [Edy] in support of her motion to reopen are beyond our limited jurisdiction."). The motion to reopen in Edy's case was based on the immediate relative petition for Edy that Chy Chy had procured through his own proceedings.

Subsequently, on March 25, 2003, the Board granted Edy's motion to reopen. The Board in Edy's case determined that the approved petition from Chy Chy's case comprised new evidence warranting a reopening of Edy's case to consider an adjustment of status for Edy. The Board's order granting the motion to reopen did not reference the fact that the Service had, on May 1, 2002, issued the notice of intent to revoke the immediate relative petition in Chy Chy's case.

On August 12, 2003—before Edy received a hearing with an IJ as directed by the Board pursuant to the grant of her motion to reopen—the Service, acting in Chy Chy's proceedings, revoked the newly granted immediate relative petition. The Service stated that the revocation was based on the marriage fraud bar of 8 U.S.C. § 1154(c), which precluded the grant of immediate relative benefits to Edy. In reaching this conclusion, the Service did not rely on the 1986 Board decision in which Edy was found to have entered a sham marriage with William Horton for the purpose of obtaining an immigration benefit. Rather, the Service relied upon the evidence submitted by counsel for Chy Chy and the evidence submitted in the 1986 case. Evidence submitted in 2002 but not considered in 1986 included the results of the polygraph examination purportedly supporting Edy's claim that her marriage to William Horton had been a bona fide marriage and not a sham. On August 29, 2003,

Chy Chy filed a notice of appeal with the Board concerning the revocation of the immediate relative petition.

On November 6, 2003, when Edy was to have her post-reopening hearing with an IJ in her own case, Edy's attorney was unavailable due to a medical emergency. As a result, the IJ received various exhibits but granted a continuance so that Edy could proceed at a later date with the benefit of counsel. On April 20, 2004, the Board in Chy Chy's case affirmed the revocation of the immediate relative petition without providing Chy Chy a briefing schedule or hearing. On July 19, 2004, Chy Chy filed with the Board a motion to reopen and establish a briefing schedule.

Eventually, on September 4, 2004, Edy had her hearing before an IJ in her reopened case. At the time, as noted above, the Board in Chy Chy's case had affirmed the revocation of the immediate relative petition. Also, Chy Chy had filed his motion to reopen in the case concerning an immediate relative visa for Edy, and his motion to reopen was pending with the Board. As a result of the fact that Chy Chy's motion to reopen was pending, Edy asked for a continuance of her own hearing, arguing that uncertainty surrounding Chy Chy's case warranted further delay in her own, reopened case. On September 9, 2004, the IJ in Edy's case issued an oral decision denying relief to Edy and denying her request for a continuance. The IJ was aware of the fact that Chy Chy's motion to reopen was pending in Chy Chy's case, but nevertheless determined that, because there was no currently pending I-130 immediate relative petition, Edy was not entitled to an adjustment of status. The IJ ordered Edy removed to Nigeria, stating:

> [T]he Court notes that under the circumstances because there is no valid I-130 approval, that the respondent is not eligible for adjustment of status. The Government has also interposed and has argued to the Board, previously, that the respondent is barred from a new visa in view of the fact that Section 204(c) of the Act, 8 U.S.C. Section 1154(c) may be an impediment to the exercise of that discretion and the Court notes further

that the Government has inferred here because of the respondent's protracted conduct that the Government believes that even if the respondent were to have an approved I-130 application in the adjustment aspect of the case, that there may well be an argument that the respondent does not merit the relief of the exercise of discretion in granting her application. At any rate, the Court notes that at the present time the respondent is not eligible for adjustment of status because she does not have an approved I-130 pending before the Court and therefore, the respondent's request for a continuance is denied. The Government's request for an entry of an order [of removal], at this time, will be granted.

Edy appealed to the Board, and on October 3, 2005, the Board affirmed without opinion.

Meanwhile, Chy Chy's motion to the Board to reopen (in the case involving an immediate relative visa for Edy) apparently languished. Chy Chy and Edy were represented by attorneys from the same law firm, and the pending motion to reopen in Chy Chy's case was submitted on behalf of Edy with Edy's name appearing in the signature block. The Board apparently misplaced or did not receive a document purporting to demonstrate that the attorney listed on the signature block of the motion to reopen represented Chy Chy as well as Edy. Finding the identity of the party and attorney listed on the motion to be critical information for establishing jurisdiction, the Board, on July 11, 2006, issued a one paragraph opinion denying Chy Chy's motion to reopen based on a lack of jurisdiction. The Board stated:

This case was last before us on April 20, 2004, when this Board dismissed petitioner's appeal. A motion to reopen has now been submitted. However, there is no indication that the petitioner or his attorney is pursuing this matter. We note that the copy of the Notice of Entry of Appearance as Attorney or Representative before the Board (Form EOIR-27) that is attached to the motion bears the beneficiary's name and signature, not that of petitioner. Under these circumstances, the motion is denied for lack of jurisdiction.

Chy Chy and Edy appeal. Edy appeals the denial of her request for a continuance, and Chy Chy purports to appeal the Board's revocation of the immediate relative petition for Edy as well as the Board's denial of his motion to reopen.

Edy argues that we have jurisdiction to review the denial of her request for a continuance and that the IJ and the Board abused their discretion in denying her request for a continuance. Chy Chy argues that we have jurisdiction to hear his appeal because he was denied due process in the revocation of the immediate relative petition when the Board did not grant him a hearing on his administrative appeal of the revocation and when the Board dismissed his motion to reopen based on a scrivener's error or on an agency mishandling of requisite forms. He notes, also, that although his proceeding involved the revocation of the petition rather than an order of removal, there is an outstanding order of removal concerning Edy. Under these circumstances, he argues that the two cases are inextricably intertwined, both procedurally and factually.

II.     Discussion

We must first address the issue of our jurisdiction to hear the present appeals. Vasquez-Velezmoro v. INS, 281 F.3d 693, 695 (8th Cir. 2002) ("[T]his Court has jurisdiction to determine preliminary jurisdictional issues."). Edy appeals the denial of her request to continue her removal hearing. Our jurisdiction to entertain such a challenge is precluded by a prior panel decision that addressed this same issue. See Grass v. Gonzalez, 418 F.3d 876, 879 (8th Cir. 2005) ("[W]e have no jurisdiction to review the IJ's wholly discretionary denial of Grass's request for a continuance of his removal hearing."). In Grass, we analyzed the availability of jurisdiction over a claim identical to Edy's, applying the jurisdictional provisions of the Immigration and Nationality Act ("INA") as amended by the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-607 (1996), codified in relevant part at 8 U.S.C. § 1252(a)(2)(B), and the REAL ID Act

of 2005, Pub. L. No. 109-13, Div. B, § 106(a)(1)(A)(iii), 119 Stat. 231, 310 (2005), codified in relevant part at 8 U.S.C. § 1252(a)(2)(D). Since Grass, Congress has not acted to further amend the jurisdictional provisions of the INA, and neither our en banc court nor the Supreme Court has overruled Grass. As such, we are without jurisdiction to hear Edy's challenge to the denial of her motion for a continuance.[2]

---

[2]That having been said, we note that it may be appropriate for our court to revisit this issue en banc. Since Grass, a majority of the circuits have determined that the courts of appeals do have jurisdiction to review an IJ's discretionary denial of a motion to continue. See Alsamhouri v. Gonzales, 484 F.3d 117, 122 (1st Cir. 2007); Zafar v. U.S. Att'y Gen., 461 F.3d 1357, 1360-62 (11th Cir. 2006); Khan v. Att'y Gen. of the U.S., 448 F.3d 226, 231-32 (3d Cir. 2006); Ahmed v. Gonzales, 447 F.3d 433, 436-37 (5th Cir. 2006); Sanusi v. Gonzales, 445 F.3d 193, 198-99 (2d Cir. 2006); Abu-Khaliel v. Gonzales, 436 F.3d 627, 632-34 (6th Cir. 2006); see also Subhan v. Ashcroft, 383 F.3d 591, 595 (7th Cir. 2004) (preceding Grass); Medina-Morales v. Ashcroft, 371 F.3d 520, 528 (9th Cir. 2004) (motion to reopen). In general, these circuits have determined that the jurisdiction-stripping provision of 8 U.S.C. § 1252(a)(2)(B) only applies when the grant of discretion to the Attorney General comes from the Immigration and Nationality Act itself, and that § 1252(a)(2)(B) does not preclude judicial review when the source of discretionary authority is not statutory, but is found only in an implementing regulation, 8 C.F.R. § 1003.29. See, e.g., Alsamhouri, 484 F.3d at 122 (1st Cir. 2007) ("This provision does not limit our jurisdiction when an immigration judge exercises discretion that is not specified anywhere in the statutory subchapter, but rather derives entirely from regulations promulgated by the Attorney General under the statute.") .

In fact, in response to a petition for a writ of certiorari in Alsamhouri, the Attorney General decided to adopt the position held by the majority of the circuits. Consistent with his position in Alsamhouri, the Attorney General in the present case sent our court a letter withdrawing arguments against jurisdiction in Edy's appeal and conceding this issue. The Attorney General's concession, however, does not create subject matter jurisdiction in our court. Subject matter jurisdiction cannot arise by virtue of the parties' consent, and the concession does not relieve this panel of the duty to follow the rule of law as set forth in Grass. Although, as noted, it may be appropriate to revisit this narrow issue en banc, we do not necessarily believe the present case is the most appropriate vehicle for doing so. As explained below, even

Regarding the immediate relative petition case, Chy Chy presents multiple arguments in support of his assertion that we have jurisdiction. He argues that his case does, in fact, involve an order of removal because there is an outstanding order of removal concerning Edy, the beneficiary of his visa application, making the revocation of the immediate relative visa tantamount to an order of removal. He also argues that, because he claims he was denied his constitutional right to due process, his allegations suffice to bring his case within the exceptions contained in the REAL ID Act and defeat the jurisdiction-stripping provisions of the IIRIRA. Finally, he argues that jurisdiction is proper in any event because an order of removal is not necessary for our jurisdiction. Rather, he argues, sundry other orders by the Service can provide a basis for our jurisdiction under the Administrative Procedures Act. We reject his arguments.

First, Chy Chy's case in and of itself does not involve an order of removal. Although we have consolidated these cases for the purpose of this appeal, and although the motion to reopen in Edy's case arose and was ultimately denied due to developments in Chy Chy's case, we reject Chy Chy's attempt to wholly conflate his case with Edy's case and invoke our jurisdiction based on the fact that Edy's case involves an order of removal. To do so would ignore the fact that Edy has *already* appealed to our court and lost on the merits regarding the same order of removal. See Ikenokwalu-White, 316 F.3d at 805 ("[W]e conclude that the Board's factual determination that [Edy] Ikenokwalu failed to establish good moral character during the three year statutory period was supported by substantial evidence on the record and we affirm the Board's legal determination that she was therefore not eligible for discretionary suspension of deportation."). We will not indulge the fiction that Chy Chy's present case involves an order of removal in order to entertain a second appeal over Edy's already-appealed order of removal. As held herein, we lack jurisdiction

if we were to determine that we have jurisdiction over Edy's or Chy Chy's claims, their claims are wholly without merit.

over the denial of the motion to reconsider in Edy's case. Chy Chy cannot indirectly invoke jurisdiction based on Edy's case when Edy herself cannot establish jurisdiction.

Second, although § 1252(a)(2)(D) provides limited jurisdiction for our review of alleged constitutional violations or errors of law, § 1252(a)(2)(D) on its face deals with petitions for review of orders of removal and only applies to "petition[s] for review filed with an appropriate court of appeals in accordance with this section." Id. We are unwilling to adopt an interpretation of this provision that would expand the INA's grant of initial jurisdiction to the courts of appeals beyond petitions for review of orders of removal. See 8 U.S.C. § 1252(b)(2) ("The petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings."). Accordingly, we do not interpret the "constitutional claims or questions of law" exception contained in the REAL ID Act to be a general grant of appellate court jurisdiction over all appeals involving alleged constitutional violations by the Service regardless of the nature of the underlying proceedings; the alleged constitutional violations must result in an order of removal that is otherwise directly appealable to the courts of appeals. See, e.g., Jilin Pharm. U.S.A., Inc., v. Chertoff, 447 F.3d 196, 206 n.16 (3d Cir. 2006) ("Had these claims been brought in a petition for review of a final order of removal, then the jurisdiction stripped by § 1252(a)(2)(B) to review these constitutional claims would have been restored by recently enacted § 1252(a)(2)(D). Because, however, this is not a petition for review and no final order of removal has been issued, § 1252(a)(2)(D) does not apply.") (internal citations omitted).

Finally, we previously recognized that the INA, as amended by the IIRIRA, is not the exclusive source of jurisdiction empowering federal courts to review actions by the Board. Rather, the Administrative Procedure Act, 5 U.S.C. § 701, et seq., may in some instances serve as a waiver of the federal government's sovereign immunity, and through the general federal question jurisdiction of 28 U.S.C. § 1331, empower

the federal district courts to hear timely appeals from certain Board orders. See, e.g., Sabhari v. Reno, 197 F.3d 938, 942-43 (8th Cir. 1999) (holding that a district court had jurisdiction to review a Board decision on the merits of a petition to classify an immediate relative as a United States citizen and a petition to seek adjustment of status and permanent residency). We have no occasion in this case to determine whether anything in the jurisdiction-restoring provisions of the REAL ID Act impacts our holding in Sabhari. The potential availability of *district court* review under the APA, as addressed in Sabhari, does not permit federal appellate courts to exercise authority under the APA in the first instance. Rather, in each case cited by Chy Chy in support of finding jurisdiction, a court of appeals reviewed the question of jurisdiction in the context of an appeal from a final judgment of a district court. See, e.g., ANA Int'l, Inc. v. Way, 393 F.3d 886, 890-95 (9th Cir. 2004) (reviewing a district court decision and finding that the IIRIRA did not preclude district court review of a visa revocation under the APA); Firstland Int'l, Inc. v. INS, 377 F.3d 127, 130-31 (2d. Cir. 2004) (finding that 8 U.S.C. § 1252(a)(2)(B) did not preclude a district court from reviewing a visa revocation where mandatory notice requirements had not been satisfied); Sabhari, 197 F.3d at 942-43 (addressing the APA route to federal court review in the context of an appeal from the judgment of a district court). Accordingly, we reject Chy Chy's argument that the APA justifies the direct exercise of jurisdiction by this court of appeals over the Board's revocation of the immediate relative petition.

Although we lack jurisdiction, we feel compelled to comment on Chy Chy's characterization of this case and the arguments raised in his brief. Chy Chy characterizes the present case as the removal of a thirty-year resident of the United States based on a twenty-year-old-ruling regarding a sham marriage or based on what was arguably a scrivener's error in the filing of a motion to reopen or an agency's misplacement of a document concerning the appearance of an attorney. If these characterizations of the present cases were accurate or if his arguments had merit, the removal of Edy and revocation of the immediate relative petition would be draconian indeed.

Chy Chy's arguments, however, are wholly without merit. He argues that he was denied due process because the Service failed to comply with certain notice requirements in effect in 2002 and 2003 when it issued its notice of intention to revoke the immediate relative petition and when it ultimately revoked the immediate relative position. He argues that the notice requirements must be strictly honored or the Service is without authority to revoke a previously granted petition. He also argues he was denied due process because the Board denied his motion to reopen based on allegedly faulty determinations as to whether his attorneys had filed the motion on his behalf (as the petitioner) or on his mother's behalf (as the beneficiary). He alleges this faulty determination of fact led the Board to deny his motion to reopen in summary fashion without permitting an opportunity for briefing or argument.

Before Chy Chy could demonstrate any entitlement to relief under his various due process arguments, he would have to demonstrate that, absent the alleged due process violations, the outcome of the proceedings may well have been different. See Aziz v. Gonzales, 478 F.3d 854, 859 (8th Cir. 2007) ("'[A]n alien must prove that he was actually prejudiced by the lack of process afforded to him.'") (quoting Briones-Sanchez v. Heinauer, 319 F.3d 324, 327 (8th Cir.2003)); Mohamed v. Gonzales, 477 F.3d 522, 527 (8th Cir. 2007) ("To prevail, Mohamed must establish prejudice, i.e., a showing 'that the outcome of the proceedings may well have been different had the due process violation not occurred.'") (quoting Ismail v. Ashcroft, 396 F.3d 970, 974-75 (8th Cir. 2005)). Here, all the related proceedings, at their core, dealt with the repeated findings that Edy entered into a sham marriage with William Horton and thereby was ineligible for an adjustment of status or the grant of an immediate relative visa. The record to support the Board's finding as to the issue of a sham marriage is overwhelming. Further, this issue has been repeatedly argued, and both Edy and Chy Chy have had opportunities to present evidence that the marriage was bona fide and not a sham (in Edy's proceedings leading to the 1986 revocation of permanent lawful resident status and in Chy Chy's proceedings involving his

-12-

attorney's written response to the Service's 2002 notice of intent to revoke the immediate relative petition).

The Service in 2002-03 did not, as alleged by Chy Chy, merely rely upon the 1986 finding when it revoked the immediate relative petition. Rather, the administrative record demonstrates that the Service, in Chy Chy's case, considered evidence relevant to the sham marriage issue, including affidavits from William Horton and the newly submitted polygraph examination results for Edy. As a result, any errors that may have occurred in relation to the identity of the party filing a motion or the provision of notice regarding revocation of the immediate relative petition are without consequence. Given the well-supported records, any remand, reopening or continuance would be futile and merely delay resolution of Edy's tortuously long immigration history.

Finally, we note that, had the Service consolidated these cases at an earlier date, had the Service more diligently checked its own records as to the ongoing changes in each case, or had Chy Chy and Edy diligently informed the relevant authorities in each separate case as to the status of the other's case, it is by no means certain that the initial grant of an immediate relative petition ever would have occurred. In conclusion, the piecemeal litigation of these separate cases left loopholes open for an extended period of time and permitted Edy to successfully delay her removal. Success at delaying removal through these procedural mechanisms, however, in no way adds merit to the underlying, substantive requests for relief.

The petitions for review are denied.

_____