# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2126

_____

Roberto Basilo Castro-Pu,      *
         *
        Petitioner,      *
         *
       v.      *    Petition for Review of an Order
         *    of the Board of Immigration Appeals.
Michael B. Mukasey, Attorney General    *
of the United States of America,      *
         *
        Respondent.      *

_____

Submitted: April 18, 2008
Filed: August 28, 2008

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and MELLOY, Circuit Judges.

_____

LOKEN, Chief Judge.

Roberto Basilo Castro-Pu, a native and citizen of Guatemala, entered the United States in June 1991 without inspection. Deportation proceedings commenced two days later. He conceded deportability and timely applied for asylum, withholding of deportation (now removal), and relief under the Convention Against Torture (CAT), claiming a well-founded fear of persecution by the Guatemalan army and government if repatriated due to his ethnicity and political opinions. See 8 U.S.C. § 1101(a)(42)(A). Castro-Pu petitions for review of the final order of the Board of Immigration Appeals (BIA) denying all relief. After careful review of the lengthy administrative proceedings, we deny the petition for review.

# I. The Administrative Proceedings

In his asylum application and in testimony at the first asylum hearing in 1991, Castro-Pu, a member of the Quiche indigenous ethnic minority, claimed fear of persecution in Guatemala based on two series of events. In 1988, while serving in the Civil Defense unit in his home village in Quiche Province, his unit was ordered to help bury twenty-three indigenous refugees from a nearby village that the army had massacred as suspected guerillas. Castro-Pu did not obey and then refused to report for further Civil Defense duties despite his leader's warning that the army, which controlled Civil Defense forces, would treat him as a guerilla unless he returned to duty. Instead, Castro-Pu fled to Guatemala City with his wife and child, where he worked in 1989 and then enrolled in San Carlos University in 1990, without incident. By early 1991, Castro-Pu had become an organizer of a student group that regularly protested government and military corruption and human rights abuses. In February and again in May, 1991, four unknown men came to his home when Castro-Pu was not there, frightening his wife. The first time they asked where he was, what he was doing, and why he had left his home village. The second time, they said they wanted to talk to him about a problem they described as urgent. Suspecting that the army was looking to kidnap and kill him because of his disobedience in 1988 and his more recent student protest activities, Castro-Pu fled to the United States.

The immigration judge (IJ) denied Castro-Pu's application. The IJ found "credible and persuasive" his testimony about his activities in Guatemala, including forcible recruitment into the Civil Defense force and human rights abuses by both government forces and the guerillas. However, the IJ found that Castro-Pu did not meet his burden of proving a well-founded fear of future persecution because he did not establish "that the government of Guatemala has the inclination to persecute him." The IJ noted that Castro-Pu remained in his home village for one month after refusing to serve in the Civil Defense in 1988, where the army could easily have found him. Later, his father told the military that he had moved to Guatemala City, and many

friends knew where he was, yet he was not harassed. Finally, he presented no evidence of the identity of the men who visited his home in February and May 1991, and no evidence the visits were connected. The February visitors knew where Castro-Pu lived yet made no further attempt to contact him, and he remained in Guatemala City unharmed for a month after the May visit.

Castro-Pu timely appealed to the BIA, arguing that he was eligible for asylum and withholding of deportation to Guatemala because the record established a well-founded fear of future persecution. A divided BIA panel dismissed the appeal in December 1999, almost eight years later. Relying on a February 1999 Department of State report, Guatemala Country Report on Human Rights Practices for 1998, the BIA dismissed Castro-Pu's appeal because "sweeping changes" in country conditions had rendered his fear of future persecution "less, rather than more, well-founded." The BIA noted that peace accords ended the lengthy civil war; free and fair elections were held in 1995 and 1996; and the government showed willingness to arrest and prosecute those responsible for extrajudicial killings and human rights abuses, instituted "significant reforms to better the plight of indigenous peoples," and increased its tolerance of peaceful demonstrations and civil associations. The dissenting panel member concluded that Castro-Pu should have been granted asylum in 1991 and argued that the majority denied Castro-Pu due process by dismissing the appeal without affording him an opportunity "to address, explain, or rebut" the reported changed country conditions.

Castro-Pu did not seek judicial review, apparently because his former attorney failed to notify him of the BIA's adverse decision. But when arrested for removal in mid-2000, he petitioned the district court in St. Louis to grant a writ of habeas corpus, arguing the BIA denied him due process by failing to provide an opportunity to rebut the evidence of changed country conditions. Agreeing with the BIA dissenter, the district court granted the writ and remanded to the agency "for a new hearing so that Petitioner may respond to the evidence of changed country conditions." Castro-Pu v.

-3-

Ashcroft, No. 4:00CV1182 (E.D. Mo. judgment Mar. 22, 2001). The BIA then vacated its 1999 decision and remanded the case to the immigration judge "for a further hearing consistent with the [district] court's decision."

A second series of hearings was held in 2005. After the prior administrative record and the Department of State's Guatemala Country Report on Human Rights Practices for 2004 were placed in the record, counsel for Castro-Pu first called the Director of the Immigration Law Project at Legal Services of Eastern Missouri to testify as an expert on current country conditions in Guatemala. The IJ ruled that the witness was not an expert and excluded her opinion testimony on country conditions because she lacked relevant academic credentials and last visited Guatemala in 1989. Castro-Pu then testified that he was still afraid that the government or the army would find him anywhere in the country and kill him if he returned because of "the previous problem." He based this present fear on the 2004 Country Report, his general familiarity with conditions in Guatemala, and phone contacts with family members still in that country. Expressly adopting the initial 1991 IJ decision and the vacated 1999 BIA decision, the IJ denied all relief, finding that Castro-Pu "has presented very little evidence concerning the changed country conditions in his native country" and "no evidence that anyone is seeking him out any longer." The BIA dismissed Castro-Pu's timely administrative appeal. This petition for review followed.

**II. Discussion**

**A.** Castro-Pu first argues that the BIA erred in denying relief on the merits because he proved a well-founded fear of future persecution based on his ethnicity and political opinions. He bases this argument on a faulty premise, namely, that the BIA's 1999 decision and the district court's grant of habeas relief "presupposed" that he established either past persecution or a well-founded fear of future persecution in 1991. To the contrary, Castro-Pu's attorney did not even argue past persecution in the 1991 proceedings, no doubt because Castro-Pu was not harmed in either 1988 or

-4-

1991, and the IJ's 1991 decision explicitly rejected his claim of a well-founded fear of future persecution. In dismissing Castro-Pu's appeal in 1999, the BIA majority did not address the merits of that ruling, instead relying on significantly changed country conditions in rejecting his claim of a well-founded fear. Nor did the district court address the well-founded fear issue on the merits. Rather, the court remanded for the limited purpose of affording Castro-Pu an opportunity to respond to the changed country conditions that were the basis of the BIA's 1999 decision.

Castro-Pu goes on to argue that, because he proved past persecution, the BIA erred in not presuming a well-founded fear of future persecution and "wrongly placed the burden of proof on the changed country conditions issue on [Castro-Pu] rather than the Government." Again, the premise is faulty. Castro-Pu did not raise the issue of past persecution in 1991, and therefore that issue was not properly exhausted. See Etchu-Njang v. Gonzales, 403 F.3d 577, 583 (8th Cir. 2005).[1] The second hearing was held to give him an opportunity to refute the evidence of changed country conditions that caused the BIA to find in 1999 that he did not have a well-founded fear of *future* persecution.[2] The IJ found that he failed to refute that evidence and reinstated the denial of relief. The BIA agreed. We review that decision under the substantial evidence standard and must uphold the agency's decision unless "the evidence [Castro-Pu] presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." Miah v. Mukasey, 519 F.3d 784, 787 (8th Cir. 2008) (quotation omitted); see Fisher v. I.N.S., 291 F.3d 491, 496 (8th Cir. 2002) (standard of review in proceedings begun before April 1, 1997).

---

[1]These circumstances distinguish Castro-Pu from the Guatemalan petitioner in Corado v. Ashcroft, 384 F.3d 945 (8th Cir. 2004), who claimed far worse treatment and advanced a timely past persecution claim to the agency.

[2]The BIA was on sound ground in ruling that changed country conditions after an asylum applicant left his native country are relevant to whether he currently has a well-founded fear of future persecution. See Regalado-Garcia v. I.N.S., 305 F.3d 784, 788 (8th Cir. 2002); Menjivar v. I.N.S., 259 F.3d 940, 942 (8th Cir. 2001).

The BIA acknowledged that recent Department of State reports reflect "a certain level of civil strife in Guatemala" but agreed with the IJ that Castro-Pu failed to show "a particularized risk of persecution on account of a protected ground" that would establish either a well-founded fear of persecution making him eligible for asylum or the withholding of removal, or a likelihood of torture warranting relief under the CAT, see 8 C.F.R. § 1208.16(b) & (c). Substantial evidence in the administrative record as a whole supports this decision. Castro-Pu was not harmed during or after the incidents in 1988 and 1991, his immediate family has remained in Guatemala unharmed, and he failed to rebut the substantial evidence that political and human rights conditions dramatically improved after he left the country. Therefore, we deny the petition to review the agency's denial of relief on the merits.

**B.** Castro-Pu next argues that the IJ and the BIA erred in denying his motion to terminate the administrative proceedings, which would have resulted in the agency commencing a new removal proceeding in which Castro-Pu could seek cancellation of removal under 8 U.S.C. § 1229b(b). This procedure, known as "repapering," is a response to the impact of complex changes to the immigration laws on pending deportation proceedings. See generally Rojas-Reyes v. I.N.S., 235 F.3d 115, 119-26 (2d Cir. 2000). The procedural setting is complex, but the answer to Castro-Pu's contention is not. The argument fails because we lack jurisdiction to review the Attorney General's discretionary decision not to repaper a particular case. See Mateo v. Ashcroft, 102 Fed. Appx. 519, 520-21 (8th Cir. 2004) (unpublished per curiam), citing 8 U.S.C. § 1252(g) and 8 C.F.R. § 1240.16. Here, the Department of Homeland Security (which has assumed the prosecutorial functions of the former Immigration and Naturalization Service) declined to exercise its repapering discretion, and the BIA concluded it had no authority to compel repapering. Castro-Pu's argument that this was a denial of due process is without merit. See Rojas-Reyes, 235 F.3d at 125.

**C.** Finally, Castro-Pu argues that the BIA abused its discretion and denied him due process by refusing to allow his expert witness to testify and then denying his

motion for a continuance so he could find another expert on changed country conditions. To be entitled to relief on due process grounds, a petitioner must show fundamental unfairness and prejudice, that is, that the outcome of the proceeding may well have been different absent the procedural irregularity. Tun v. Gonzales, 485 F.3d 1014, 1025-26 (8th Cir. 2007). In Tun, we remanded because the IJ excluded testimony by two experts, a physician, whose examination of petitioner tended to corroborate his testimony of torture by Burmese authorities, and a professor, whose published works and frequent travels to Burma qualified him as an expert on current country conditions. 485 F.3d at 1026-29. Here, the IJ had good reason to find that the witness was not qualified to provide expert testimony on current country conditions in Guatemala, unlike the excluded experts in Tun. Moreover, the witness's testimony, as set forth in an offer of proof the IJ included in the administrative record, consisted of general, subjective opinions that would have added little or nothing to the evidence of changed country conditions contained in the Department of State reports. Thus, Castro-Pu failed to show either an abuse of discretion or prejudice. We have no jurisdiction to review the IJ's discretionary denial of a continuance. Grass v. Gonzales, 418 F.3d 876, 879 (8th Cir. 2005), cert. denied, 547 U.S. 1079 (2006).

For the foregoing reasons, we deny the petition for review.

_____