# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-1842

———————

Kerubo Hanggi, formerly known as    *
Kerubo F. Crawford,    *
   *
       Petitioner,    *
   *   Petition for Review of an Order
     v.    *   of the Board of Immigration
   *   Appeals.
Eric H. Holder, Jr., Attorney    *
General of the United States,    *
   *
       Respondent.[1]    *

———————

Submitted: December 10, 2008
Filed: April 20, 2009

———————

Before COLLOTON, BRIGHT, and SHEPHERD, Circuit Judges.

———————

COLLOTON, Circuit Judge.

Kerubo Hanggi, formerly known as Kerubo F. Crawford, petitions for review of an order of the Board of Immigration Appeals ("BIA") adopting and affirming the decision of an immigration judge ("IJ") and dismissing her appeal. Hanggi argues that the IJ abused her discretion in denying both Hanggi's request for a continuance and

———————

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Holder is automatically substituted for former Attorney General Michael B. Mukasey as Respondent in this case.

her motion to terminate removal proceedings. We conclude that Hanggi's challenge to the continuance ruling is not properly before us, because she failed to raise the point in her appeal to the BIA. We also hold, assuming we have jurisdiction to do so, that the IJ did not abuse her discretion in denying the motion to terminate removal proceedings. Finally, we reject Hanggi's suggestion that the BIA's decision violated her constitutional right to due process. Accordingly, we deny the petition for review.

I.

Hanggi, a female native and citizen of Kenya, arrived in the United States in 1997. She was admitted on a nonimmigrant student visa to attend Scott Community College, but did not attend that institution. In 1999, Hanggi married a United States citizen named Tyrone Crawford. Based on that marriage, Hanggi filed an I-485 application for adjustment of status with the former Immigration and Naturalization Service ("INS"), pursuant to 8 U.S.C. § 1255. In February 2000, Crawford filed a petition for alien relative on her behalf, also termed an I-130 petition, pursuant to 8 U.S.C. § 1154. The following month, Hanggi was granted advance parole into the United States, *see* 8 U.S.C. § 1182(a)(5)(A); 8 C.F.R. § 212.5(f), which she used to leave and reenter the United States to resume her pending application for adjustment of status. Nearly four years later, in March 2004, United States Citizen and Immigration Services ("USCIS") denied the I-130 visa petition filed on her behalf, which had the effect of also terminating her I-485 application for adjustment. The agency deemed that Crawford abandoned the petition when he failed to appear for a scheduled interview.

While Hanggi was still married to Crawford, she met another U.S. citizen named Daniel Hanggi. Hanggi divorced Crawford, and in July 2004, married Daniel. In April 2004, however, Hanggi had been placed in removal proceedings by the Department of Homeland Security ("DHS") and ordered to appear before an IJ.

At the first hearing on July 23, 2004, counsel for DHS filed an amended notice to appear. The notice classified Hanggi as an "arriving alien" to reflect her previous grant of advance parole, and charged her under 8 U.S.C. § 1182(a)(7)(A)(i)(I) with failing to possess the documentation required to stay in the country. As a result of the amended notice, the IJ granted a continuance to give Hanggi's counsel enough time to review the new charges against her.

On October 22, 2004, a second hearing before the IJ was held, but the proceedings were again continued because Hanggi had retained new counsel. By the time of the second hearing, Hanggi's second husband, Daniel, had filed an I-130 alien relative petition on her behalf with USCIS. Hanggi had not filed an application to adjust her status, however, because under a then-existing regulation, "arriving aliens" placed in removal proceedings were categorically ineligible to apply for adjustment of status – either from USCIS or the immigration courts. 8 C.F.R. § 245.1(c)(8) (1997); *see also Ceta v. Mukasey*, 535 F.3d 639, 646 (7th Cir. 2008). In May 2006, the Department of Justice ("DOJ") and DHS issued a new interim rule in response to conflicting courts decisions, some of which rejected as contrary to law the complete bar on adjustment of status by arriving aliens in removal proceedings. 71 Fed. Reg. 27,585, 27,587 (May 12, 2006). The interim rule allowed arriving aliens in removal to seek adjustment, but in most cases only with USCIS, not through the immigration courts. 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1).

At this point, Hanggi's efforts to remain in the United States proceeded on two separate tracks. On one track, Hanggi appeared before the IJ and continued to challenge DHS's attempts to remove her. On the other, Hanggi awaited a decision from USCIS on the pending I-130 petition filed on her behalf by her spouse, Daniel.

At the next hearing, on January 31, 2005, the IJ granted a third continuance, this time to give USCIS more time to adjudicate the pending I-130 petition. By the time of the fourth hearing on July 1, 2005, USCIS had issued a notice of intent to deny

Hanggi's petition based on allegations that her first marriage to Crawford was designed to evade the immigration laws. Still, however, USCIS had not issued a final decision on the I-130 petition, so the IJ granted another continuance to await an outcome. Also at this hearing, Hanggi presented a letter to the IJ arguing that in light of *Succar v. Ashcroft*, 394 F.3d 8 (1st Cir. 2005), one of the decisions holding impermissible the regulation barring arriving aliens in removal from applying for adjustment, Hanggi should be permitted to seek adjustment of status. The IJ noted that she was not bound by First Circuit precedent, and that without a statement from this court or the BIA, she would continue to apply the rule that arriving aliens in removal are ineligible to seek adjustment.

At the fifth, sixth, and seventh hearings, held on November 4, 2005, February 10, 2006, and June 9, 2006, respectively, the IJ granted three additional continuances, again because no final decision on the I-130 petition had been rendered by USCIS.

By the time the eighth hearing took place on October 19, 2006, DHS and DOJ had issued the interim rule described above. *See* 71 Fed. Reg. 27,585, 27,587 (May 12, 2006) (codified at 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1)). The rule states that "[i]n the case of an arriving alien who is placed in removal proceedings, the immigration judge does not have jurisdiction to adjudicate any application for adjustment of status filed by the arriving alien," with one exception. 8 C.F.R. § 1245.2(a)(1)(ii). That exception gives the IJ jurisdiction to review an arriving alien's "previously filed" adjustment application, if that application was denied by USCIS and if the arriving alien was placed in removal proceedings. *Id.* Otherwise, only USCIS may adjudicate adjustment applications by arriving aliens in removal proceedings. *Id.* §§ 245.2(a)(1), 1245.2(a)(1)(ii).

The IJ made this jurisdictional point clear during the eighth hearing. At some point during the removal proceeding, Hanggi requested that the IJ adjust her status to that of an alien lawfully admitted for permanent residence, pursuant to 8 U.S.C.

§ 1255. The IJ noted, however, that she had no jurisdiction over Hanggi's application for adjustment of status because the narrow jurisdictional exception of 8 C.F.R. § 1245.2(a)(1)(ii) did not apply. Hanggi was granted parole to pursue adjustment based on her first marriage, and she was now seeking adjustment with respect to a different marriage. Thus, the IJ concluded, her new application was not a "previously filed" application that triggered the jurisdictional exception. Nonetheless, because USCIS had not yet issued a decision on Hanggi's I-130 petition, the IJ decided to grant "one more" continuance.

The ninth and final hearing was held on January 18, 2007. The IJ again stated that she had no jurisdiction over Hanggi's adjustment application, regardless of whether her I-130 petition was granted or denied. At that point, Hanggi made an oral motion to terminate the removal proceedings, so that she could await a decision on the I-130 petition and file an application for adjustment with USCIS, without being subject to an order of removal. Hanggi also asked the IJ to grant another continuance. The IJ denied the request for a continuance, closed the case, and instructed Hanggi to pursue relief with USCIS instead, for only USCIS had jurisdiction over her application for adjustment. Finally, the IJ granted both parties additional time to supplement Hanggi's motion to terminate removal proceedings. In the meantime, on January 23, 2007, Hanggi filed an application for adjustment with USCIS.

The IJ issued her final decision on February 13, 2007. First, the IJ reiterated that she lacked jurisdiction under the new regulations to review Hanggi's application for adjustment based on her second marriage, because it was not a "previously filed application" under 8 C.F.R. § 1245.2(a)(1)(ii)(B). Second, the IJ denied Hanggi's motion to terminate the removal proceedings, stating that DHS had properly placed her into removal based on the charges in the amended notice to appear. Third, because the IJ was without jurisdiction to adjudicate Hanggi's application for adjustment, the IJ denied the application. Finally, the IJ ordered Hanggi's removal, but granted her the privilege of voluntary departure.

In March 2007, Hanggi filed a notice of appeal with the BIA. Her brief was due by October 12, 2007, but it was not filed until October 18, 2007. Hanggi filed a motion for acceptance of an untimely brief, which the BIA denied, noting that Hanggi's reason for the delay was insufficient.

The BIA issued its decision in March 2008, adopting and affirming the decision of the IJ and dismissing Hanggi's appeal. The BIA concluded that the IJ did not err in denying the motion to terminate, because Hanggi was not challenging "the validity of the removal proceedings." The BIA also determined that to the extent that Hanggi was challenging the IJ's decision to deny her adjustment application based on her marriage to Daniel, the IJ "correctly concluded that she did not have jurisdiction over the application based on the interim regulations." Finally, the BIA affirmed the order of voluntary removal and dismissed her appeal.

Hanggi petitions for review of the BIA's decision. Because the BIA adopted and affirmed the decision of the IJ, we review the decision of the BIA together with the IJ's decision. *Falaja v. Gonzales*, 418 F.3d 889, 894 (8th Cir. 2005).

II.

Hanggi first claims that the IJ abused her discretion by failing to grant a ninth continuance, so that USCIS could adjudicate her pending I-130 petition and application for adjustment. Hanggi contends that without a continuance, or some other way to halt the removal proceedings, she could be removed by DHS before USCIS resolves her pending application. If Hanggi is removed, then she will be ineligible for adjustment of status based on marriage. *Ceta*, 535 F.3d at 646; *Kalilu v. Mukasey*, 548 F.3d 1215, 1217-18 (9th Cir. 2008) (per curiam) (noting that "if an alien is removed, his adjustment application is deemed abandoned," and that an "alien cannot reapply for adjustment of status until he has reentered the United States, which he is barred from doing for ten years"); *cf. Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244,

1255 n.10 (11th Cir. 2008) (noting in response to a similar predicament that DHS may be willing, given the circumstances, to take steps to allow the alien to seek adjustment despite the traditional barriers to such relief).[2]

We conclude, however, that Hanggi's challenge to the IJ's denial of a ninth continuance is not properly before us, because she failed to raise the issue in her appeal to the BIA. Hanggi filed an untimely brief, and the BIA refused to accept it. Accordingly, the BIA considered only the IJ's final written decision of February 13, 2007, which did not address the request for a continuance. Hanggi's failure to exhaust this issue before the BIA precludes our review of the question at this stage. *Ming Ming Wijono v. Gonzales*, 439 F.3d 868, 871 (8th Cir. 2006); *Etchu-Njang v. Gonzales*, 403 F.3d 577, 582-83 (8th Cir. 2005). We therefore need not consider whether our court's general rule that we lack jurisdiction to review the discretionary denial of a motion for a continuance, *see Ikenokwalu-White v. Gonzales*, 495 F.3d 919, 923-24 & n.2 (8th Cir. 2007), might be subject to an exception where the denial of a continuance "has the effect of a substantive ruling" on an alien's application to adjust status. *Ceta*, 535 F.3d at 646-47 (quoting *Benslimane v. Gonzales*, 430 F.3d 828, 832 (7th Cir. 2005)); *see Subhan v. Ashcroft*, 383 F.3d 591, 595 (7th Cir. 2004).

### III.

Hanggi argues next that the IJ abused her discretion by denying Hanggi's motion to terminate the removal proceedings. Hanggi claims that the IJ should have terminated the proceedings so that Hanggi could pursue adjustment of status with USCIS without being subject to a removal order. The IJ's refusal to do so, she argues,

---

[2]Hanggi's I-130 petition was denied by USCIS on November 18, 2008, after the briefs in this case were submitted. We are informed, however, that Hanggi has appealed that denial to the BIA, and her removal by the government presumably would foreclose her ability to pursue that appeal. We therefore reject the government's suggestion that this appeal is moot.

created the possibility that she will be removed prior to a final decision by the BIA on her I-130 petition.

We question whether we have jurisdiction to review an IJ's denial of a motion to terminate removal proceedings. In *S-Cheng v. Ashcroft*, 380 F.3d 320, 323-24 (8th Cir. 2004), and *Castro-Pu v. Mukasey*, 540 F.3d 864, 868-69 (8th Cir. 2008), this court held that we lacked jurisdiction to reach the merits of similar arguments. In *S-Cheng*, an alien seeking asylum brought a procedural challenge to the BIA's decision, arguing that she "should be in exclusion proceedings rather than removal proceedings." 380 F.3d at 323. "In exclusion, she would be allowed the opportunity to adjust her status . . . without leaving the United States," whereas in removal, she could not seek adjustment without first returning to her native country and applying from there. *Id.* at 324. This court held that under 8 U.S.C. § 1252(g), which precludes jurisdiction over a decision of the Attorney General "to commence proceedings, adjudicate cases, or execute removal orders against any alien," the court of appeals lacks jurisdiction to review the decision to initiate removal proceedings instead of exclusion proceedings. *Id.* We reasoned that the court lacks power to "hear a challenge to the decision to forgo or initiate proceedings against an alien," because such decisions are within the prosecutorial discretion of the agency, and thus "cannot be reviewed by the courts." *Id.* In *Castro-Pu*, we again referenced § 1252(g), holding that we "lack jurisdiction to review the Attorney General's discretionary decision not to repaper a particular case." 540 F.3d at 869. "Repapering" involves the Attorney General's discretionary decision to terminate deportation proceedings and reinitiate removal proceedings for certain aliens who were disadvantaged by changes to the immigration laws that occurred in 1996. *Id.* at 869; *see also* 65 Fed. Reg. 71,273, 71,274-75 (Nov. 30. 2000).

Although this case arises in a different procedural posture than did *S-Cheng* or *Castro-Pu*, the principle underlying those decisions seems to apply here as well. Under the mandate set forth in § 1252(g), we lack jurisdiction to review decisions to

"commence proceedings, adjudicate cases, or execute removal orders against an alien," which includes the decision to "forgo or initiate proceedings against an alien." *S-Cheng*, 380 F.3d at 324. A decision to terminate proceedings, like a decision to forgo proceedings, implicates the Attorney General's enforcement discretion. *Id.*; *see Heckler v. Chaney*, 470 U.S. 821, 831 (1985) ("This Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion.").

Assuming, however, that we have authority to review the IJ's decision to deny a motion to terminate, *see Lukowski v. INS*, 279 F.3d 644, 647 & n.1 (8th Cir. 2002), the IJ did not abuse her discretion. *See Lici v. Mukasey*, 258 F. App'x 845, 848 (6th Cir. 2007) (reviewing the denial of a motion to terminate removal proceedings for abuse of discretion). An IJ has authority to terminate removal proceedings under two regulatory provisions. The first provision, 8 C.F.R. § 1238.1(e), allows an IJ, upon the request of an immigration officer of DHS, to terminate removal proceedings if the alien has been convicted of certain criminal offenses and is subject to removal under 8 U.S.C. § 1228. Hanggi has not been convicted of any criminal offense, and DHS did not ask the IJ to terminate the case on that basis. The second regulation states:

> An immigration judge may terminate removal proceedings to permit the alien to proceed to a final hearing on a pending application or petition for naturalization when the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors; in every other case, the removal hearing shall be completed as promptly as possible notwithstanding the pendency of an application for naturalization during any state of the proceedings.

8 C.F.R. § 1239.2(f). This provision does not apply to Hanggi, because she has not filed an application or petition for naturalization. A naturalization petition (Form N-400) cannot be filed until the applicant has been lawfully admitted for permanent

residence, *see* 8 U.S.C. § 1427(a), and neither Hanggi's pending I-485 application for adjustment of status nor the pending I-130 petition for alien relative filed on her behalf qualifies.

Without authority to terminate under either of these regulations, the only basis for the IJ to terminate Hanggi's removal proceeding was through a ruling on the merits. But, as the BIA noted in its order, Hanggi did not challenge the validity of the removal proceedings. Accordingly, the IJ did not abuse her discretion by refusing to terminate the proceedings.

## IV.

Hanggi also suggests briefly that the IJ violated her due process rights by denying a continuance and refusing to terminate removal proceedings. She contends that those decisions may foreclose her ability to obtain adjustment of status, if the government removes her from the United States before the adjustment application is finally adjudicated. Hanggi fails to state a claim for a violation of due process rights, however, because she has no constitutionally-protected liberty interest in the discretionary relief of adjustment of status. *Nativi-Gomez v. Ashcroft*, 344 F.3d 805, 808 (8th Cir. 2003).

*        *        *

For the reasons stated, the petition for review is denied.

BRIGHT, Circuit Judge, concurring.

The convolutions in the proceedings in this case, which has droned on for more than five years, remind one of the famous fictional case of Jarndyce v. Jarndyce, in Charles Dickens's novel *Bleak House*. But this matter is not fiction; petitioner is

-10-

being forced to leave this country even though her appeal to the BIA from the denial of her I-130 petition is still pending.

I am obliged, however, to concur in the opinion under the existing immigration laws, as explained in the opinion. I do so with this suggestion: the Immigration Service should stay removal proceedings pending the outcome of her appeal from the denial of her I-130 petition.

_____