# United States Court of Appeals
## For the First Circuit

No. 06-2505

EVELIN LOPEZ-REYES,

Petitioner,

v.

ALBERTO R. GONZALES,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Circuit Judge</u>,
Selya, <u>Senior Circuit Judge</u>,
and Lipez, <u>Circuit Judge</u>.

<u>Timothy J. Nutter</u> on brief for petitioner.
<u>Karen Y. Stewart</u>, Attorney, Office of Immigration Litigation, <u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, and <u>Stephen J. Flynn</u>, Senior Litigation Counsel, on brief for respondent.

July 31, 2007

**LYNCH**, **Circuit Judge**.  At issue is whether Evelin Lopez-Reyes, a twenty-one-year-old Guatemalan, has stated a colorable due process claim arising from the denial by an Immigration Judge of her motion to administratively close or stay her removal proceedings.  Lopez has not stated such a claim.

Lopez's removal proceedings began on July 28, 2000, shortly after she had arrived in the United States without being admitted or paroled.  She was removed in absentia on November 2, 2000 after failing to appear at a scheduled hearing, see 8 U.S.C. § 1229a(b)(5)(A), but that removal order was subsequently revoked.  On March 28, 2002, Lopez applied for asylum.

On April 20, 2005, Lopez argued to the IJ that her removal proceedings should be closed or stayed until her father's pending application for asylum was adjudicated, so that she could claim derivative asylum benefits.  Lopez had previously received several continuances based on her father's pending application.  In her April 2005 motion, Lopez asserted that her father satisfied the eligibility criteria set out in the class action settlement agreement in American Baptist Churches v. Thornburgh, 760 F. Supp. 796 (N.D. Cal. 1991).  That agreement covers Salvadorans and Guatemalans who were present in the United States as of September 19, 1990 and October 1, 1990, respectively.  See id. at 799.  Under the settlement agreement, ABC class members "are entitled, under certain specified conditions, to new proceedings . . . to determine

their right to asylum or any other rights and benefits established under the agreement."  In re Morales, 21 I. & N. Dec. 130, 132 (BIA 1996).

The IJ denied Lopez's motion for administrative closure based on an objection made by the Department of Homeland Security (DHS).  The IJ adhered to law that an administrative closure may not be granted if it is opposed by either party to the proceedings. See In re Gutierrez-Lopez, 21 I. & N. Dec. 479, 480 (BIA 1996). When the IJ denied the motion, Lopez withdrew her applications for asylum, withholding of removal, and relief under the Convention Against Torture; she requested and received a final order of removal to Guatemala.

On appeal, the Board of Immigration Appeals affirmed, holding that, in light of the DHS's objection, the IJ did not err in denying Lopez's motion for administrative closure.[1]  The BIA stated that the reasons why the DHS had chosen to oppose the motion were irrelevant, and were not before the agency.  The BIA also rejected Lopez's claim that she would suffer prejudice if she were

_____

[1]    Lopez asserts that the BIA violated her right to due process by denying her request for administrative closure or a stay.  Her arguments to this court, however, do not distinguish between administrative closures and stays.  The BIA, for its part, treated Lopez's motion simply as one for administrative closure. Lopez has assigned no error to the Board's reading of her appeal. We similarly focus on Lopez's request for administrative closure. Petitioner has waived any independent argument regarding a request for a stay.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

-3-

separated from her father. The Board pointed out that Lopez "may still be eligible to benefit from any grant of her father's asylum application by the DHS."

Administrative closure is a procedural convenience that may be granted if both parties to the removal proceedings agree, but it does not constitute a final order. See In re Lopez-Barrios, 20 I. & N. Dec. 203, 204 (BIA 1990); In re Amico, 19 I. & N. Dec. 652, 654 n.1 (BIA 1988). Rather, administrative closure of a case temporarily removes a case from an immigration judge's calendar or from the Board's docket. See Mickeviciute v. INS, 327 F.3d 1159, 1161 n.1 (10th Cir. 2003); Amico, 19 I. & N. Dec. at 654 n.1.

Under BIA precedent, a case may not be administratively closed if either party opposes. See Gutierrez-Lopez, 21 I. & N. Dec. at 480; In re Peugnet, 20 I. & N. Dec. 233, 234 n.1 (BIA 1991); In re Munoz-Santos, 20 I. & N. Dec. 205, 207 (BIA 1990). Thus, neither an Immigration Judge nor the BIA may administratively close a case where, as here, the DHS objects.

Lopez argues that the denial of the motion for administrative closure violated her due process rights. In the course of making this due process argument, she also suggests that government counsel incorrectly withheld consent to her motion.

The parties dispute whether the statutory bar to review under 8 U.S.C. § 1252(g) applies:

> Except as provided in this section and notwithstanding any other provision of law

-4-

(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). The government maintains that its decision to object to administrative closure is not reviewable by this court because that decision falls within its prosecutorial discretion to "adjudicate cases."

The answer is not clear. The Supreme Court has cautioned against a broad reading that would treat § 1252(g) as

a sort of "zipper" clause that says "no judicial review in deportation cases unless this section provides judicial review." In fact, what § 1252(g) says is much narrower. The provision applies only to three discrete actions that the Attorney General may take: her "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders." (Emphasis added.) There are of course many other decisions or actions that may be part of the deportation process -- such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order.

Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999) (last emphasis added).

It is not obvious whether a decision to withhold consent to administrative closure falls within the Attorney General's

-5-

discretion to "adjudicate cases," or whether such a decision is closer to a decision "to reschedule the deportation hearing," which apparently falls outside the scope of § 1252(g). The Supreme Court explained that at the time § 1252(g) was enacted, the INS[2] had been engaging in a practice known as "deferred action" through which the service could "decline to institute proceedings, terminate proceedings, or decline to execute a final order of deportation." See id. at 484 (emphasis added) (quoting 6 C. Gordon et al., Immigration Law and Procedure § 72.03[2][h] (1998)) (internal quotation marks omitted). This practice led to litigation in cases where the INS chose not to apply "deferred action," and the Court stated that § 1252(g) "seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." Id. at 485 (emphasis added).

We need not decide this question about the scope of § 1252(g) because, for a different reason, we lack authority to review the challenge to the government's decision not to agree to administrative closure. Lopez did not make this argument to the

---

[2] On March 1, 2003, the functions of the INS were transferred to the DHS. See Homeland Security Act of 2002, Pub. L. No. 107-296, § 471(a), 116 Stat. 2135, 2205 (codified at 6 U.S.C. § 291(a)).

BIA. As a result of this failure to exhaust, we lack jurisdiction to consider the argument now.[3] <u>See</u> 8 U.S.C. § 1252(d)(1); <u>Olujoke v. Gonzales</u>, 411 F.3d 16, 23 (1st Cir. 2005).

Lopez alternatively attempts to cast her claim in constitutional due process terms, relying on the provision in the REAL ID Act granting jurisdiction to courts of appeals over constitutional questions. 8 U.S.C. § 1252(a)(2)(D) ("Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."); <u>see also</u> REAL ID Act of 2005, Pub. L. No. 109-13, § 106, 119 Stat. 231, 310.

Lopez's argument seems to be that the BIA's unanimous consent rule violates due process when it is used to deny an administrative closing of removal proceedings to a child who has a derivative interest in her parent's asylum application and the parent's application has not yet been adjudicated.

On the facts of this case, there is no colorable due process claim. <u>See</u> <u>Alsamhouri</u> v. <u>Gonzales</u>, 484 F.3d 117, 124-25

---

[3] To the extent Lopez now argues that she was entitled to a continuance, rather than administrative closure or a stay, we similarly lack authority to consider this argument, as Lopez failed to raise it before the BIA.

(1st Cir. 2007). To begin, Lopez has failed to demonstrate an entitlement to relief. Thus, there is no cognizable liberty or property interest at stake, and no due process claim is stated. See DaCosta v. Gonzales, 449 F.3d 45, 50 (1st Cir. 2006); Jupiter v. Ashcroft, 396 F.3d 487, 492 (1st Cir. 2005). Further, there is, as the BIA held, no cognizable prejudice because Lopez may still be eligible to claim derivative benefits based on her father's asylum application. Absent cognizable prejudice, there is no due process claim. Dar-Salameh v. Gonzales, 468 F.3d 47, 51 (1st Cir. 2006). Finally, Lopez was not, in any event, treated unfairly. She had already received a number of continuances.

The petition for review is denied.