# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2455

_____

Rolando Hernandez,　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　Petitioner,　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　v.　　　　　　　　　　　　　*　On Petition for Review of an
　　　　　　　　　　　　　　　　　*　Order of the Board of
　　　　　　　　　　　　　　　　　*　Immigration Appeals.
Eric H. Holder, Jr.,[1] Attorney General　*
of the United States of America,　　*
　　　　　　　　　　　　　　　　　*
　　　　　Respondent.　　　　　　　*

_____

Submitted: March 10, 2009
Filed: September 1, 2009

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Rolando Hernandez, a native and citizen of Guatemala, petitions for review of a decision of the Board of Immigration Appeals (BIA), denying his application for asylum, withholding of removal, protection under the Convention Against Torture (CAT), and asylum on humanitarian grounds ("humanitarian asylum"), as well as his request to administratively close or continue his case. We deny the petition in part, grant the petition in part, and remand for further proceedings.

_____

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H. Holder, Jr., is automatically submitted for Michael B. Mukasey as Respondent.

I.

Rolando Hernandez was born in Quezaltenango, Guatemala, on August 20, 1965. Hernandez entered the United States without inspection on September 5, 1992, after fleeing Guatemala to escape from the Organization for People in Arms (ORPA), which had forced him into its service. In May 1993, the Immigration and Naturalization Service (INS)[2] issued an order to show cause against Hernandez, alleging that he was deportable for having entered the United States without inspection under former section 241(a)(1)(B) of the Immigration & Nationality Act (INA), 8 U.S.C. § 1231(a)(1)(B).[3] Hernandez conceded deportability but applied for asylum under section 208 of the INA, 8 U.S.C. § 1158(a), and withholding of deportation pursuant to former section 243(h) of the INA.[4] He contended that he was unable to return to Guatemala where he faced persecution by ORPA members because of his public opposition to ORPA.

In June 1994, Hernandez had an individual merits hearing before Immigration Judge Cuevas ("IJ Cuevas"). Hernandez testified through a translator. IJ Cuevas found that Hernandez credibly established that he had been forcibly recruited into ORPA by coercion and misrepresentations, that he had not supported the guerrillas, and that, as soon as he became aware of their goals, he informed the leaders of his disagreement with them and attempted to leave the group. IJ Cuevas concluded that Hernandez was entitled to asylum because: (1) his credible testimony established a

---

[2]The INS was abolished and its functions assumed by the Department of Homeland Security (DHS) on March 1, 2003.

[3]Deportation proceedings were commenced in Hernandez's case prior to April 1, 1997, the effective date of the Illegal Immigration Reform and Immigration Responsibility Act of 1996 (IIRIRA) which repealed and renumbered portions of the INA.

[4]Post-IIRIRA, withholding of deportation is codified at INA § 241(b)(3), 8 U.S.C. § 1231(b)(3).

well-founded fear of persecution by leaders of ORPA, who knew that he had deserted ORPA after announcing his opposition to the group, and (2) Hernandez had established that it would be more likely than not that he would be persecuted if he returned to Guatemala. IJ Cuevas then granted Hernandez's application for asylum and withholding of deportation.

The INS appealed. In October 2000, the BIA held that Hernandez was statutorily ineligible for asylum and withholding of deportation pursuant to the so-called "persecutor bar," under which any person who has "assisted or otherwise participated in" persecution of any person on account of a protected ground is ineligible for asylum and withholding of removal. See 8 U.S.C. § 1101(a)(42) (ineligible for asylum); id. § 1231(b)(3)(B)(i) (ineligible for withholding of removal). Therefore, the BIA ordered Hernandez deported as statutorily ineligible for relief from deportation. The BIA did not overturn the credibility findings of IJ Cuevas and did not reach the issue of whether, absent the persecutor bar, Hernandez was otherwise entitled to asylum.

Hernandez petitioned this court for review, asserting that the BIA applied an incorrect legal standard in determining that he had not met his burden of proving that the persecutor bar did not apply. This court agreed and vacated the BIA's order, remanding "for its full consideration of the issue of eligibility for the type of relief requested by Hernandez." Hernandez v. Reno, 258 F.3d 806, 813, 815 (8th Cir. 2001).

On remand, the BIA held that Hernandez was not ineligible for asylum under the "persecutor bar." However, the BIA observed, "[T]hese events transpired 10 years ago, in 1992. It is not clear on the record whether the guerillas would still be interested in the respondent. Further, in 1996, the parties to the Guatemalan civil war signed peace accords." (App. 29.) Therefore, the BIA determined that "in light of the passage of time and the changed circumstances in Guatemala, . . . the best course at

this point is a remand to the Immigration Judge for a further hearing on the respondent's application for asylum." (Id.)

On remand from the BIA, Hernandez's case was assigned to Immigration Judge Dierkes ("IJ Dierkes"). IJ Dierkes presided over Hernandez's preliminary hearing on October 29, 2002. At the hearing, Hernandez objected to the substitution of IJ Dierkes and requested that IJ Cuevas's 1994 order granting Hernandez asylum be reinstated. Although he did not use the term "nunc pro tunc" at the hearing,[5] Hernandez characterizes this as a request for a grant of asylum *nunc pro tunc*. IJ Dierkes denied the request.

On November 22, 2002, Hernandez filed a motion, requesting that IJ Cuevas handle the remand of his case. IJ Dierkes presided at the next preliminary hearing held on January 21, 2003, and stated that he had forwarded the motion to the Office of the Chief Immigration Judge in Washington, D.C. Following the hearing, IJ Dierkes issued an order denying the motion. The order stated:

---

[5]"*Nunc pro tunc*, a Latin phrase meaning 'now for then,' refers to the power of a court to treat something done now–typically a court order–as effective as of an earlier date. . . . *Nunc pro tunc* relief is often granted where a court has itself made an error such as failing to sign an order on an intended date, which it rectifies by labeling the order 'nunc pro tunc' and making it effective as of the earlier date." Gutierrez-Castillo v. Holder, 568 F.3d 256, 261-62 (1st Cir. 2009). In the immigration context, "the INA does not explicitly confer the power to issue *nunc pro tunc* orders on the BIA, [but] the BIA has interpreted the INA to implicitly confer such power." Patel v. Gonzales, 432 F.3d 685, 693 (6th Cir. 2005); see Edwards v. INS, 393 F.3d 299, 308 (2d Cir. 2004) ("The equitable remedy of *nunc pro tunc* (literally 'now for then') relief has a long and distinguished history in the field of immigration law. For more than sixty years, the Attorney General and the Board of Immigration Appeals have recognized its importance in mitigating potentially harsh results of the immigration laws.").

Judge Cuevas was on detail when he heard this matter in 1994. He no longer comes to Minnesota on detail. This case was assigned to me when it was remanded from the BIA. I have discussed the Respondent's motion with Assistant Chief Immigration Judge Michael Rahill, and he has advised me that Judge Cuevas will not be coming to Minnesota for further details. Accordingly, Judge Cuevas is considered "unavailable" within the meaning of 8 CFR 240.1(b). The case will remain on my docket.

(Id. at 57.)

As an alternative to his asylum application, Hernandez filed an application for both suspension of deportation and cancellation of removal. On November 15, 2006, Hernandez filed a motion for administrative closure and, in the alternative, a continuance for purposes of repapering.[6] The motion provides: "Respondent once again respectfully restates his position that this Court has independent authority, should it deny and/or pretermit Respondent's I-589 and Suspension applications, to postpone these proceedings for good cause while the proposed repapering rules are

---

[6] "'Repapering' is the process by which the Attorney General may terminate prior exclusion proceedings and instead initiate new removal proceedings. This process allows aliens previously in exclusion proceedings to apply for cancellation of removal, which would have otherwise been unavailable prior to the effective date of IIRIRA." Ming-Hui Wu v. Holder, 567 F.3d 888, 890 n.4 (7th Cir. 2009) (citation omitted).

finalized."[7]   (App. 97.)   The motion references a June 26, 2006, telephone conversation between IJ Dierkes and DHS counsel.[8]   (Id. at 97-98.)   The motion further states:

> [W]ith respect to the asylum application, we continue to insist that this Court has ample basis for granting it, including on an equitable *nunc pro tunc* basis given the extraordinary circumstances of the case and the manifest injustice that denial would cause Respondent and his family. As we have observed before, Mr. Hernandez could easily have been a U.S. citizen by now but for the errors and delays caused by the government in this case. See e.g. *Edwards v. INS*, 393 F.3d 299 (2d Cir. 2004).

(App. 97.)

On January 10, 2007, IJ Dierkes conducted Hernandez's individual merits hearing.  IJ Dierkes asked DHS's counsel to respond to the motion for administrative closure and, alternatively, a continuance.  DHS counsel responded,

> [T]he government is not willing to agree to administrative closure, that's simply an attempt to indefinitely continue the proceedings and in light of the lack of any re-papering regulations and frankly, being the same

---

[7]On November 30, 2000, the INS and the Executive Office of Immigration Review promulgated a proposed rule that allows aliens to apply for repapering.  65 Fed. Reg. 71,273 (proposed Nov. 30, 2000) (to be codified at 8 C.F.R. § 240.3).  To date, the repapering regulation has not been finalized.

[8]On June 26, 2006, IJ Dierkes attempted to hold a teleconference with DHS counsel and Hernandez's counsel.  Hernandez's counsel was unavailable.  IJ Dierkes had a conversation with DHS counsel, a portion of which was recorded on Hernandez's counsel's voice mail.  Hernandez's counsel attached a transcript of the recording to the motion seeking administrative closure and, alternatively, a continuance for purposes of repapering.  (App. 98.)

status as it has many years, the Government seeks the Court to fulfill its duty and [go] forward with the adjudication of the case.

(App. 253.) IJ Dierkes rendered an oral decision at the hearing, denying Hernandez's

applications for asylum and related relief because . . . there ha[ve] been major changes in your country since you were there. . . . My ruling in your case is in no way a negative reflection on you in any way. It's just that I think the situation in Guatemala has changed since you were there. So I don't want you to think that this is a matter of I don't find you a credible person. I found your testimony to be generally credible. Sometimes these cases are overtaken by events.

(Id. at 256.) IJ Dierkes denied Hernandez's alternative motions for administrative closure and a continuance, observing that "the Court does not believe that it has authority to administratively close this case on its own, without the consent of both parties." (Id. at 6.) IJ Dierkes further stated:

[T]he Court would reiterate that it does not believe that it has authority on its own to administratively close this case for re-papering. The proposed regulation makes it clear that it is entirely within the discretion and authority of the Immigration Service to determine whether or not re-papering should take place. The Government has consistently refused to agree to administrative closure in this case, which reflects in my opinion the attitude of the Department of Homeland Security towards whether or not it should grant the discretionary relief of re-papering to this respondent. . . . [T]his Court cannot on its own go ahead and administratively close the case.

(Id. at 23-24.) IJ Dierkes did not separately address the request for a continuance which was also premised on the finalization of the repapering regulations.

With regard to whether circumstances in Guatemala had changed since Hernandez was granted asylum, IJ Dierkes stated:

> [T]he Court believes that there have just been too significant changes in Guatemala to allow the Court to find that this respondent still has a well-founded fear of returning there. For these reasons, the Court will deny the respondent's application for asylum and withholding of deportation. No evidence has been offered that the government of Guatemala or those acting with the consent or acquiescence of the government would have any reason to harm the respondent. Accordingly, the Torture Convention claim [is] denied.

(Id. at 26.) IJ Dierkes also denied Hernandez's application for suspension of deportation. Finally, IJ Dierkes ordered Hernandez removed from the United States to Guatemala.

Hernandez appealed to the BIA. The BIA rejected Hernandez's contention that the assignment of IJ Dierkes violated Hernandez's due process rights, stating that "[t]here is no due process right to adjudication by the Immigration Judge of one's choice" and "there is no evidence in the record supporting a conclusion that the Immigration Judge's decision was decided on some basis other than his understanding and knowledge of the applicable laws and regulations and what he adduced from [his] participation in the case."[9] (Id. at 2.) The BIA also affirmed the denial of Hernandez's motion for administrative closure and, alternatively, a continuance for purposes of repapering, stating:

> The Immigration Judge correctly ruled that he did not have the authority to agree to administrative closure over the objection of [DHS]. An Immigration Judge cannot administratively close deportation proceedings over the objection of either party. *Matter of Lopez-Barrios*, 20 I&N Dec. 203, 204 (BIA 1990). The respondent argues on appeal that the DHS opposition to administrative closure constitutes an abuse

---

[9]The BIA specifically addressed the telephone conversation between IJ Dierkes and DHS counsel that took place on June 26, 2006, and observed that Hernandez "ha[d] drawn no connection between the informal conversation . . . and any improper action or conclusion made by the Immigration Judge . . . ." (App. 2.)

of discretion. We have no jurisdiction over appeals from the DHS['s] exercise of discretion.

(App. 2.) The BIA further explained that "the Immigration Judge did not err in not granting a continuance, as the possibility of a future promulgation of regulations that might represent a favorable change to . . . one party or the other does not generally constitute good cause for a continuance." (Id. at 3.)

Concerning Hernandez's argument that IJ Dierkes should have issued a decision on the humanitarian asylum claim, the BIA determined:

> Upon review of the record, we see no legitimate comparison between the facts in this case and the facts in a case where a grant of humanitarian asylum would be appropriate. *See, e.g. Matter of Chen*, 20 I&N Dec. 16 (BIA 1989). Thus, the respondent's request for humanitarian asylum does not constitute a basis for reversal of the Immigration Judge's decision or for a remand of the record.

(App. 3.)

The BIA denied Hernandez's request for a *nunc pro tunc* grant of asylum, observing that there were no "special considerations in this case which would warrant such an extraordinary remedy." (Id.) The BIA explained:

> In a 2001 decision, the United States Court of Appeals for the Eighth Circuit held that the Board did not apply the proper standard in concluding that the respondent was barred from asylum as a persecutor. *See Hernandez v. Reno*, 258 F.3d 806 (8th Cir. 2001). Upon remand, the Board held that the respondent was not subject to the persecutor bar, but did not make a finding that the respondent was otherwise eligible for asylum. The record was remanded for further findings. *See* BIA Decision, dated July 19, 2002; *see also* Immigration Judge's written order denying respondent's motion to exclude evidence, dated February 23, 2004. The mere fact that the respondent is not an individual who is

barred from asylum as a persecutor does not support, on its own, a conclusion that he is eligible for asylum. There has been no point in these proceedings where the respondent's eligibility for asylum was not contested by the DHS, and, more importantly, the respondent has never benefitted from a final order determining that he fully met the standards for eligibility for asylum. While we acknowledge that there have been unfortunate delays in this case, we conclude that this case does not present circumstances which would warrant the extraordinary measure of a *nunc pro tunc* grant of relief.

(App. 3.) Finally, the BIA determined that Hernandez's argument for suspension of deportation was precluded by Matter of Mendoza-Sandino, 22 I. & N. Dec. 1236 (BIA 2000). Therefore, the BIA dismissed the appeal and adopted and affirmed IJ Dierkes's decision. Hernandez now petitions this court for review.

## II.

In Hernandez's petition for review, he asserts that: (1) the substitution of IJ Dierkes violated 8 C.F.R. § 1240.1(b), the regulation applicable to the withdrawal and substitution of immigration judges, and Hernandez's due process rights, (2) the BIA abused its discretion in rejecting his request for a grant of asylum *nunc pro tunc*, (3) the BIA violated 8 C.F.R. § 1208.13(b)(1)(iii) and abused its discretion in denying remand for consideration of Hernandez's claim of humanitarian asylum, and (4) the BIA abused its discretion and violated Hernandez's due process rights by refusing to administratively close his case for repapering or continue his deportation proceedings. We address each in turn.

## A.

Hernandez asserts that the substitution of IJ Dierkes for IJ Cuevas during Hernandez's remanded immigration proceedings violated 8 C.F.R. § 1240.1(b) and Hernandez's due process rights. 8 C.F.R. § 1240.1(b) provides that:

> The immigration judge assigned to conduct the hearing shall at any time withdraw if he or she deems himself or herself disqualified. If an immigration judge becomes unavailable to complete his or her duties, another immigration judge may be assigned to complete the case. The new immigration judge shall familiarize himself or herself with the record in the case and shall state for the record that he or she has done so.

Although IJ Cuevas traveled to Minnesota on detail when he conducted Hernandez's hearing in 1994, IJ Cuevas no longer did so when Hernandez's case was remanded by the BIA in July 2002.[10] (App. 57.) Accordingly, IJ Cuevas was "unavailable" within the meaning of section 240.1(b). Therefore, the fact that IJ Dierkes was substituted for IJ Cuevas was not in violation of section 240.1(b).

In addition, Hernandez cites no authority, and we have found none, establishing that he had a due process right to a particular immigration judge. "The Fifth Amendment's due process clause mandates that removal hearings be fundamentally fair." Al Khouri v. Ashcroft, 362 F.3d 461, 464 (8th Cir. 2004). "For a removal hearing to be fair, the arbiter presiding over the hearing must be neutral . . . ." Tun v. Gonzales, 485 F.3d 1014, 1025 (8th Cir. 2007); see Ahmed v. Gonzales, 398 F.3d 722, 725 (6th Cir. 2005) ("It is undisputed that petitioners in [immigration] proceedings are entitled to an unbiased arbiter who has not prejudged their claims."). Thus, Hernandez has a due process right to an immigration judge who is fair and impartial, but he does not have a due process right to a particular immigration judge. The record in this case does not suggest that IJ Dierkes approached the case with a closed mind or that he was not impartial. Therefore, the substitution of IJ Dierkes did not violate Hernandez's due process rights.

---

[10]IJ Dierkes received this information about IJ Cuevas's status from Assistant Chief Immigration Judge Michael Rahill. Hernandez has provided us with no reason to doubt the accuracy of Assistant Chief IJ Rahill's representation to IJ Dierkes.

B.

Hernandez asserts that the BIA abused its discretion in rejecting his request for a grant of asylum *nunc pro tunc* because the equities his case presents demonstrate that he is entitled to such relief. We note that we are not unmoved by the equities in this case. IJ Cuevas did conclude that Hernandez had made the requisite showing for asylum (although not in a final order), and this determination was rendered invalid by the change in circumstances in Guatemala that took place in the ten years that passed before the matter was revisited by IJ Dierkes. In addition, Hernandez has three children who are United States citizens. Moreover, as when this court first considered Hernandez's asylum claim eight years ago, "[t]here is . . . nothing in the record apart from his immigration status to suggest that Hernandez has been anything other than a law abiding resident of this country since his entry in September 1992." Hernandez, 258 F.3d at 811 n.5.

Hernandez states, without citation, that we review the BIA's denial of his request for a grant of asylum *nunc pro tunc* for abuse of discretion; the government does not address the standard of review. The Ninth Circuit has stated that abuse of discretion is the proper standard of review for the denial of an application to reapply *nunc pro tunc* for admission into the United States and that the petitioner "has the burden of establishing that he or she merits a favorable exercise of discretion." Dragon v. INS, 748 F.2d 1304, 1306 (9th Cir. 1984). However, Hernandez is not seeking to *apply* for asylum but a *grant* of asylum, and Dragon does not address the standard of review for the denial of such a request. Whatever the standard of review, this case does not present the sort of circumstances where *nunc pro tunc* relief is appropriate.

The federal courts have ordered *nunc pro tunc* relief, "[i]n the immigration context, . . . where agency error would otherwise result in an alien being deprived of the opportunity to seek a particular form of deportation relief." Edwards, 393 F.3d at 310-11; see Iouri v. Ashcroft, 464 F.3d 172, 182 (2d Cir. 2006). In Edwards, the

-12-

Second Circuit granted *nunc pro tunc* relief to aliens who were erroneously denied the opportunity to apply for INA § 212(c) relief.[11]  393 F.3d at 312; see Snajder v. INS, 29 F.3d 1203, 1204-08 (7th Cir. 1994) (allowing petitioner to file applications for § 212(c) relief and adjustment of status, despite spending more than five years in prison, because he had been eligible for relief during the time of his original hearing but the IJ failed to properly advise him of his right to counsel and counsel would have advised him to seek such relief); see also Batanic v. INS, 12 F.3d 662, 667-68 (7th Cir. 1993) (ordering the BIA to allow the petitioner to apply for asylum to remedy the IJ's error in proceeding with hearing without the petitioner's attorney present).  This case is distinguishable from Edwards, Snajder, and Batanic on the basis of the relief sought. While the petitioners in those cases sought the restoration of a deprived opportunity to *apply* for deportation relief, Hernandez seeks a *grant* of asylum.  See Roman v. INS, 233 F.3d 1027, 1033 (7th Cir. 2000) (distinguishing  petitioners' request for asylum *nunc pro tunc* with relief sought in Batanic because there the petitioner "was unequivocally barred from seeking asylum").

Furthermore, the speculative nature of Hernandez's request for asylum *nunc pro tunc* demonstrates that he is not entitled to such relief.  Hernandez argues that the BIA should have granted him asylum *nunc pro tunc* because, but for agency error and the

---

[11]Prior to the enactment of IIRIRA, "§ 212(c) . . . afforded a permanent resident alien a discretionary waiver of deportation if he had lived in the United States for seven consecutive years and had not been convicted of an 'aggravated felony.'" Munoz-Yepez v. Gonzales, 465 F.3d 347, 348-49 (8th Cir. 2006).  The IIRIRA "repealed § 212(c) . . . replacing the discretionary waiver of deportation with a more limited and still discretionary cancellation of removal provision." Id. at 349; see INA § 240A, 8 U.S.C. § 1229b(a) (providing that cancellation of removal is available to an alien who has been a lawful permanent resident for at least five years, has resided continuously in the United States for seven years, and has no conviction for an expanded universe of aggravated felonies).  The Supreme Court held that § 212(c) relief remains available for aliens who pled guilty prior to the repeal of the statute and who would have been eligible for § 212(c) relief at the time of their plea. I.N.S. v. St. Cyr, 533 U.S. 289, 326 (2001).

extraordinary delay caused by the agency, "Hernandez could have and would have applied for permanent residence in 1995, and could easily have become a full-fledged citizen years ago." (Pet'r Br. 24) In Roman, "the [petitioners] argue[d] that the BIA's five-year delay in rendering its decision denied them due process and, as a consequence, they should be granted asylum retroactively to the date of their application." 233 F.3d at 1033. The Seventh Circuit rejected this argument, noting that the petitioners' "argument that they would have been granted asylum had the BIA rendered its decision earlier is no more than mere speculation." Id. Similarly, the Second Circuit stated that *nunc pro tunc* relief is not appropriate where a court "must necessarily play the role of prognosticator, and divine whether, had the error not occurred, the [petitioner] would have likely obtained immigration relief" but is proper to where petitioners "were erroneously denied the opportunity to apply for . . . relief, and that, but for *nunc pro tunc* relief, this denial would be irremediable." Edwards, 393 F.3d at 311-12.

Under Roman and Edwards, *nunc pro tunc* relief is not appropriate in this case where any argument that Hernandez would have ultimately received a grant of asylum is speculative because, as the BIA observed, Hernandez "has never benefitted from a final order determining that he fully met the standards for eligibility for asylum." (App. 3.) It is true that the BIA incorrectly applied the persecutor bar and did not disturb IJ Cuevas's determination that Hernandez had given credible testimony. However, even absent the persecution bar and viewing Hernandez's testimony as credible, the BIA may have reversed the IJ's grant of asylum. Therefore, Hernandez's speculation that he "could easily have become a full-fledged citizen years ago," (Pet'r Br. 24) does not warrant a grant of asylum *nunc pro tunc*.

C.

Hernandez next contends that he is entitled to humanitarian asylum because there is a reasonable probability that he may suffer other serious harm upon removal to Guatemala. 8 C.F.R. § 1208.13(b)(1)(iii) provides for humanitarian asylum in the

-14-

absence of a well-founded fear of persecution.[12] Subject to the decisionmaker's discretion, section 1208.13(b)(1)(iii) provides for asylum where: (1) "[t]he applicant has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution," 8 C.F.R. § 1208.13(b)(1)(iii)(A), or (2) "[t]he applicant has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country," Id. § 1208.13(b)(1)(iii)(B).

Generally, we review the BIA's denial of a petitioner's request for humanitarian asylum for abuse of discretion. Mambwe v. Holder, 572 F.3d 540, 550 (8th Cir. 2009); see 8 U.S.C. § 1252(b)(4)(D) (providing that we may overturn a discretionary denial of asylum only if it is "manifestly contrary to the law and an abuse of discretion"). Here, however, Hernandez does not argue that the BIA abused its discretion in denying his humanitarian asylum claim. Rather, he asserts that: (1) the BIA violated 8 C.F.R. § 1003.1(d)(3)(iv) in failing to remand the claim for further factfinding as IJ Dierkes ignored the claim and (2) the BIA erred because it only considered whether such relief would be appropriate under section 1208.13(b)(1)(iii)(A) which focuses on past harm, whereas he sought humanitarian asylum under section 1208.13(b)(1)(iii)(B) in light of the future harm he alleges that he faces if removed to Guatemala.

On April 16, 2004, Hernandez submitted a response to IJ Dierkes's "request that the parties direct attention to relevant evidence in the record." (Admin. R. at 484.) In the response, Hernandez notes that he is restating his position at a prior

_____

[12]Alternatively, to be eligible for asylum, an applicant must show that she is "unable or unwilling to" return to her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Hernandez does not seek review of the denial of his application for asylum based on IJ Dierkes's determination that he does not have a well-founded fear of persecution if removed to Guatemala in light of changed circumstances.

hearing that "the evidence in the record would also support a grant of asylum pursuant to 8 C.F.R. § 208.13(b)(1)(iii) [sic], even in the absence of a well-founded fear of persecution."[13] (Id.) Hernandez further states:

> The evidence cited above would also support a humanitarian grant of asylum under 8 C.F.R. § 208.13(b)(1)(iii) [sic] and consistent with the principles of Matter of H, Int. Dec. #3276 (BIA 1996), and Matter of Pula, 19 I&N Dec. 467 (BIA 1987). A humanitarian asylum grant is justified by all of the evidence contained in Exhibits 15 and 19, and the INS Resource Information Center ["INS RIC"] Question and Answer Series report, Guatemala Hardship Considerations, at Exhibit 14, pages 54-80. The INS RIC report reflects the truly deplorable economic, educational and social conditions that persist (and are worsening) in post-war Guatemala. The consequences of these conditions for Respondent and his family members, especially his three U.S. citizen children, should be of the greatest concern to this court should it reach this discretionary analysis. The Court should not fail to weigh the BIA's inexplicable, seven-year delay in deciding the INS appeal of 1994.

(Id. at 485-86.) Hernandez made no other submissions to IJ Dierkes with regard to his claim for humanitarian asylum. IJ Dierkes did not issue a ruling on Hernandez's humanitarian asylum claim. The BIA determined that remand of the humanitarian asylum claim was not warranted and that Hernandez was not entitled to such relief. The BIA explained,

> The respondent argues that his claim for humanitarian asylum should have been assessed by the Immigration Judge. Upon review of the record, we see no legitimate comparison between the facts in this case and the facts in a case where a grant of humanitarian asylum would be appropriate. *See, e.g. Matter of Chen*, 20 I&N Dec. 16 (BIA 1989). Thus, the respondent's request for humanitarian asylum does not

---

[13]Although Hernandez cites 8 C.F.R. § 208.13(b)(1)(iii), he expressly seeks humanitarian asylum which is available under 8 C.F.R. § 1208.13(b)(iii).

constitute a basis for reversal of the Immigration Judge's decision or for a remand of the record.

(App. 3.)

Here, Hernandez asserts that he is entitled to humanitarian asylum under section 1208.13(b)(1)(iii)(B) because he would face "other serious harm" if returned to Guatemala. "Other serious harm" means "harm that is not inflicted on account of race, religion, nationality, membership in a particular social group, or political opinion, but is so serious that it equals the severity of persecution." See 65 Fed. Reg. 76,121, 76,127 (2000). This is clearly a very high standard for relief. See id.; Mehmeti v. U.S. Att'y Gen., 572 F.3d 1196, ____, 2009 WL 1789233, *3 (11th Cir. 2009) (per curiam) (providing that humanitarian asylum "is reserved for the most extraordinary cases"); see also Cutaj v. Gonzales, 206 F. App'x 485, 492 (6th Cir. 2006) (unpublished) ("Given the high standard that must be met in order to justify a grant of humanitarian asylum, we cannot say that the immigration judge abused his discretion in denying such relief in this case. . . . Furthermore, the petitioner has not established a reasonable possibility that she will suffer 'other serious harm' if she is removed to Albania. No evidence exists in the record that her family has suffered 'serious harm' by remaining in their homeland or that her attackers would ever resurface to harm her again. [The petitioner] has thus failed to meet her burden of establishing her eligibility for humanitarian asylum.").

It is undisputed that Hernandez raised a humanitarian asylum claim before IJ Dierkes and that IJ Dierkes did not address the claim. The BIA acknowledged Hernandez's humanitarian asylum claim but denied it. In denying the claim,[14] the BIA

---

[14]We note that the reasoning of the BIA in denying the humanitarian asylum claim does not indicate any improper factfinding. See 8 C.F.R. § 1003.1(d)(3)(iv) (providing that the BIA is precluded from "engag[ing] in factfinding" and that "[i]f further factfinding is needed in a particular case, the Board may remand the proceeding to the immigration judge"). Rather, the BIA determined that the facts

cited only one only case, <u>Matter of Chen</u>, 20 I. & N. Dec. 16 (BIA 1989), where the BIA granted humanitarian asylum on the basis of the severity of the past persecution the petitioner had suffered. <u>See</u> <u>id.</u> at 19 (determining that an alien may have suffered such atrocious forms of persecution by a former regime that it would be inhumane to require the alien to return to his home country "even if there is little likelihood of future persecution"). Hernandez's claim, however, is not based on the severity of the past persecution he endured, <u>see</u> 8 C.F.R. § 1208.13(b)(1)(iii)(A), but the severity of the harm he faces if returned to Guatemala, <u>see</u> <u>id.</u> § 1208.13(b)(1)(iii)(B). Therefore, neither IJ Dierkes nor the BIA addressed the humanitarian claim as Hernandez actually presented it, and we thus have nothing to review.

Furthermore, even if the BIA's decision could be characterized as rejecting Hernandez's humanitarian asylum claim under section 1208.13(b)(1)(iii)(B), this case would be analogous to <u>Brucaj v. Ashcroft</u>, 381 F.3d 602 (7th Cir. 2004). There, the IJ did not discuss humanitarian asylum as a basis for relief in his opinion, despite the fact that the petitioner had raised such a claim. <u>Id.</u> at 606. The petitioner appealed to the BIA, and the BIA rejected the humanitarian asylum claim, stating that "[a]lthough the respondent suffered harm amounting to persecution, she has failed to present any evidence to support her assertion that she would suffer severe psychological harm if she were to return to Yugoslavia." <u>Id.</u> (quotation omitted). On appeal to the Seventh Circuit, the petitioner claimed "that the BIA's stated justification for denying her humanitarian asylum was insufficient." <u>Id.</u> at 609. The Seventh Circuit agreed, stating that the BIA's decision did not address the humanitarian asylum claim "with the requisite degree of clarity necessary [for the Seventh Circuit] to conduct [its] review." <u>Id.</u> at 610. The court explained that "the precise basis for the BIA's decision cannot be gleaned from the single-sentence explanation included in the Board's order. . . . At a minimum, a more plenary consideration is certainly appropriate." <u>Id.</u> at 611. Accordingly, the court "grant[ed] [the] petition and remand[ed] the case to the BIA for clarification regarding the basis for denying [the petitioner's] humanitarian asylum

alleged by Hernandez were insufficient to warrant the relief sought.

claim." Id. As in Brucaj, the IJ did not address Hernandez's humanitarian asylum claim, and the BIA's denial of the claim leaves us unsure as to "the precise basis for the BIA's decision . . . ." See id.

In sum, we grant Hernandez's petition as to his section 1208.13(b)(1)(iii)(B) "other serious harm" humanitarian claim and remand the case to the BIA for proceedings consistent with this opinion because: (1) based on the BIA's reasoning in rejecting the claim, the BIA improperly characterized it as a "past persecution" humanitarian asylum claim under section 1208.13(b)(1)(iii)(A) such that Hernandez's actual claim has never been reviewed and (2) even if the BIA did consider it as an "other serious harm" claim, the BIA's explanation is so vague that we are unsure as to the reason for the denial.

D.

Hernandez argues that the BIA abused its discretion in denying his alternative requests for administrative closure and a continuance and violated his due process rights. Hernandez also asserts that his case must be remanded because IJ Dierkes only addressed Hernandez's request for administrative closure and ignored his request to continue his deportation proceedings.

On November 15, 2006, Hernandez sought administrative closure and, in the alternative, a continuance for purposes of repapering. In the alternative motions, Hernandez asserted the same "good cause" for both requests, the finalization of the proposed repapering rules. (App. 97.) At the January 10, 2007, hearing, DHS declined to join Hernandez's request for administrative closure. (Id. at 253.) IJ Dierkes denied the alternative motions, observing that he lacked the authority to grant such relief "without the consent of both parties." (Id. at 6.) IJ Dierkes did not separately address his reasoning for denying the request for continuance. The BIA affirmed the denial of both motions, finding that: (1) the IJ correctly concluded that he lacked the authority to grant administrative closure in light of DHS's objection, (2)

-19-

it lacked jurisdiction to consider Hernandez's argument "that the DHS['s] opposition to administrative closure constitute[d] an abuse of discretion[,]" and (3) the IJ properly denied Hernandez's request for continuance "as the possibility of a future promulgation of regulations that might represent a favorable change to . . . one party or the other does not generally constitute good cause for a continuance." (Id. at 2-3.)

With respect to the denial of Hernandez's request for continuance, controlling precedent establishes that this court lacks jurisdiction to review the discretionary decision to deny a continuance of an alien's removal hearing. Castro-Pu v. Mukasey, 540 F.3d 864, 869 (8th Cir. 2008). Thus, unless the denial of Hernandez's motion for continuance "result[s] in . . . procedural unfairness as to implicate due process" or presents "a question of law reviewable under 8 U.S.C. § 1252(a)(2)(D),"[15] we cannot consider it. Grass v. Gonzales, 418 F.3d 876, 879 (8th Cir. 2005); see Castro-Pu, 540 F.3d at 869. Although Hernandez contends that this is not the typical discretionary denial because the IJ failed to specifically address his continuance request and, in turn, violated his due process rights, the BIA's denial of the continuance is a discretionary determination over which we lack jurisdiction. See Castro-Pu, 540 F.3d at 869; Grass, 418 F.3d at 879; see also Lovan v. Holder, No. 08-2177, 2009 WL 2341822, *1 (8th Cir. July 31, 2009) ("We review the BIA's decision as the final agency action, including the IJ's findings and reasoning to the extent they were expressly adopted by the BIA." (quotation omitted)); Marroquin-Ochoma v. Holder, No. 08-2760, 2009 WL

---

[15] 8 U.S.C. § 1252(a)(2)(D), entitled "Judicial review of certain legal claims," provides that:

> Nothing in subparagraph (B) or (C) [of this section 1252], or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

2225808, *2 (8th Cir. July 28, 2009) ("Where, as here, the BIA adopts the decision of an IJ but adds additional reasoning, we review both decisions.").

We also lack jurisdiction to consider the denial of Hernandez's motion for administrative closure for two reasons. First, "[t]he decision to administratively close a case is, in th[e] [immigration] context, not distinguishable from a continuance[,]" Garza-Moreno v. Gonzales, 489 F.3d 239, 242 (6th Cir. 2007), and, as previously stated, we generally lack jurisdiction to review denials of continuances, see Castro-Pu, 540 F.3d at 869; Grass, 418 F.3d at 879. Second, there is no sufficiently meaningful standard for evaluating the IJ's or the BIA's decision not to close a case. See Diaz-Covarrubias v. Mukasey, 551 F.3d 1114, 1118 (9th Cir. 2009); Lin v. Att'y Gen. of U.S., 127 F. App'x 36, 39 (3d Cir. 2005) (unpublished). As the Ninth Circuit explained,

> [T]here is no statutory basis for administrative closures. Nor is there any regulatory basis for administrative closures. Moreover, the BIA has not set forth any meaningful standard for exercising its discretion to implement an administrative closure. Under the handful of cases considering administrative closures, the BIA has stated only that administrative closure is an "administrative convenience," and "[a] case may not be administratively closed if opposed by either of the parties." This language does not provide any guidance to the BIA regarding when it should exercise its discretion to grant administrative closure.

Diaz-Covarrubias, 551 F.3d at 1118 (quoting In re Gutierrez-Lopez, 21 I. & N. Dec. 479, 480 (BIA 1996)); see Lin, 127 F. App'x at 39 ("Like decisions to *sua sponte* reopen a case, decisions to administratively close cases are decisions that are purely committed to the BIA's or IJ's discretion. Accordingly, for these types of cases there are no meaningful standards by which this Court could review that exercise of discretion."). Thus, we lack jurisdiction over the denial of Hernandez's motion for administrative closure.

Even if we had jurisdiction to consider Hernandez's request, "[a]dministrative closure is a procedural convenience that may be granted if both parties to the removal proceedings agree, but it does not constitute a final order. Rather, administrative closure of a case temporarily removes a case from an immigration judge's calendar or from the Board's docket." Lopez-Reyes v. Gonzales, 496 F.3d 20, 21 (1st Cir. 2007) (citations omitted). "Under BIA precedent, a case may not be administratively closed if either party opposes." Id. (citing In re Gutierrez-Lopez, 21 I. & N. Dec. 479, 480 (BIA 1996); In re Peugnet, 20 I. & N. Dec. 233, 234 n.1 (BIA 1991); In re Munoz-Santos, 20 I. & N. Dec. 205, 207 (BIA 1990)). "Thus, neither an Immigration Judge nor the BIA may administratively close a case where . . . DHS objects." Lopez-Reyes, 496 F.3d at 21. Here, it is undisputed that DHS objected to Hernandez's request for administrative closure. Therefore, both the IJ and the BIA lacked discretion to grant the motion.

### III.

For the foregoing reasons, we deny the petition insofar as it relates to the substitution of IJ Dierkes, Hernandez's request for a grant of asylum *nunc pro tunc*, and his motion for administrative closure and, alternatively, a continuance. However, we grant the petition insofar as it concerns Hernandez's humanitarian asylum claim. We remand to the BIA for further proceedings consistent with this opinion.

_____