NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0312n.06

No. 09-3083

FILED
May 21, 2010
LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT


FRANCISCO RAMIREZ-CANALES,
aka Jorge Morua,

     Petitioner,

        v.

ERIC H. HOLDER, JR., Attorney General,

     Respondent.

On Petition for Review from
the Board of Immigration
Appeals

_____/

**Before:**     **GUY, COLE, and SUTTON, Circuit Judges.**

**PER CURIAM.**     This case is before us for a second time. More than two years ago, we were presented with the questions of whether the Board of Immigration Appeals (BIA) properly determined that petitioner Francisco Ramirez-Canales, inadmissible under INA § 1182(a)(9)(C)(i)(I), was neither (1) eligible for adjustment of status under § 1255(i)(2)(A), nor (2) entitled to relief under § 1255(i) *nunc pro tunc*. We affirmed in part but remanded for consideration of the particular *nunc pro tunc* relief sought by petitioner, finding that neither the immigration judge nor the BIA had addressed its availability under the circumstances. *Ramirez-Canales v. Mukasey*, 517 F.3d 904, 911 (6th Cir. 2008) (*Ramirez-Canales I*). On remand, the BIA again denied petitioner's request to *nunc pro tunc*

adjust his status. Finding the BIA's interpretation of the INA to preclude such relief to be reasonable, we deny the petition.

**I.**

Petitioner is a native and citizen of Mexico who was born in Mexico in 1976, entered the United States without inspection as a teenager, and came to Michigan in 1996.[1] He married an American citizen in 1998, and the couple now has two children who are both American citizens. In 2000, petitioner was placed in removal proceedings, following which his spouse filed a I-130 Petition for Alien Relative in December 2000. In September 2001, the immigration judge found petitioner to be subject to removal, and granted him voluntary departure in lieu of removal on or before January 23, 2002.

Meanwhile, the pending I-130 petition was approved on January 17, 2002, six days prior to petitioner's last permitted voluntary departure date. Counsel for petitioner attempted to reopen the removal proceedings, contacting INS counsel and preparing a proposed joint motion to reopen, including a request to withdraw the request for voluntary departure. According to petitioner, the joint motion was not agreed upon because the INS District Counsel could not find petitioner's file.[2] Petitioner departed the U.S. on January 23, but re-entered without inspection on January 31.

After petitioner was stopped for a traffic violation, he was again placed in removal proceedings. The first Notice to Appear charged petitioner with removability under INA §

---

[1]Although our 2008 decision stated that petitioner first came to the U.S. in 1996, the record now before us indicates an earlier arrival date.

[2]The respondent does not address this assertion.

212(a)(6)(A)(i), or 8 U.S.C. § 1182(a)(6)(A)(i), as an alien who had not been admitted or paroled. In an amended Notice to Appear, filed in May 2003, petitioner was charged with violating 8 U.S.C. § 1182(a)(9)(C)(i)(I), as an alien unlawfully present in the United States for an aggregate period of more than one year and who entered or attempted to reenter the United States without being admitted. He was also charged with violating 8 U.S.C. § 1182(a)(9)(B)(i)(II), as an alien (other than a permanent resident) who has been unlawfully present in the United States for a period of more than one year and who seeks admission within ten years of the date of departure from the United States.

Petitioner admitted the allegations and conceded removability, but sought adjustment of his status under 8 U.S.C. § 1255(i) on the basis of the approved I-130 visa petition. The immigration judge denied relief, and the BIA affirmed the decision without opinion.

Petitioner appealed to this court on two grounds. We denied petitioner's first claim for relief, concerning the interaction of § 1255(i) and § 1182(a), but remanded to the BIA for reconsideration of the question of whether it could issue relief under §1255(i) *nunc pro tunc*. In December 2008, the BIA issued a brief decision dismissing the appeal. The BIA pointed out that while the Act allows the agency to waive inadmissibility under some circumstances, *see* § 1182(a)(9)(C)(i)(I), it does not permit retroactive adjustment of status. In rejecting the suggestion in *Ramirez-Canales I* that the BIA could *erase* petitioner's second illegal entry through its use of equitable relief, the Board stated that it would "decline such a broad exercise of [its] discretionary powers." The BIA then noted that even if it had authority to retroactively adjudicate an application for adjustment of status, petitioner would remain

inadmissible under § 1182(a)(9)(C)(i)(I), because of his illegal return to the United States after accruing in excess of one year of unlawful presence here. The BIA dismissed the action, and Petitioner again timely appealed the decision to this court.

**II**.

An order is entered *nunc pro tunc*, or "now for then," to allow a court or agency to make an action taken now effective as of an earlier date. See *Patel v. Gonzales*, 432 F.3d 685 (6th Cir. 2005). The *Patel* court described the BIA's use of this power "in two situations: (1) where the only ground of deportability or inadmissibility would thereby be eliminated; and (2) where the alien would receive a grant of adjustment of status in connection with the grant of any appropriate waivers." *Patel*, 432 F.3d at 693 (citing *In re Felipe Garcia-Linares*, 21 I. & N. Dec. 254, 259 (BIA 1996); *Matter of Roman*, 19 I. & N. Dec. 855, 857 (BIA 1988)). As we described in *Ramirez-Canales I*, the power has been invoked by the BIA, generally, (1) to retroactively grant the discretion of the Attorney General to permit reapplication for admission after deportation and reentry; and (2) to apply the law as it existed when the violation occurred, rather than the current law. We also noted that the scope of *nunc pro tunc* relief is broad, and should be applied as justice requires, but not if it is barred by statute. *Ramirez-Canales I*, 517 F.3d at 910 (citing *Edwards v. INS*, 393 F.3d 299, 310 (2d Cir. 2004)).

Our review of the BIA's legal conclusions is *de novo*, but we defer to the BIA's reasonable interpretations of the INA. *Patel*, 432 F.3d at 692 (citing *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999)).

What the petitioner is seeking in this appeal is for the adjustment of his status as though he had never departed from the United States after his initial entry. He claims that the BIA erred in determining it had no authority to grant his application for adjustment of status *nunc pro tunc*. Petitioner asserts that he is entitled to *nunc pro tunc* relief because (1) agency error in the form of a misplaced file meant he could not timely secure a joint motion to reopen removal proceedings, and (2) the 2008 case of *Dada v. Mukasey*, 128 S. Ct. 2307 (2008) (holding that aliens must be permitted to unilaterally withdraw voluntary departure requests in order to pursue motions to reopen) demonstrates that it was the Agency's erroneous interpretation of applicable statutes which resulted in his departure and subsequent, illegal reentry.

In *Ramirez-Canales I*, we remanded this case to the BIA for a specific determination. As noted above, we considered BIA case law and described the two ways in which the BIA employed its equitable power to issue *nunc pro tunc* relief, the first being to "retroactively grant the Attorney General's discretion to permit an alien to reapply for admission after being deported and subsequently reentering the country." *Ramirez-Canales I*, 517 F.3d at 910. We determined that the immigration judge had "denied Ramirez-Canales relief *nunc pro tunc* under the first line of cases because [under the current law] the Attorney General has no discretion to waive violations of § 1182(a)(9)(C)(i)." *Id.*[3] We then stated that the petitioner was seeking relief "of a different nature;" in that petitioner was not looking for a *waiver* of § 1182(a)(9), but rather for adjustment of his status as though there had been no violation of

---

[3]We found the second line of cases did not apply here, as the law had not changed.

§ 1182(a)(9)(C)(i) in the first place. We stated there was "some support" for such an argument under BIA decisions, such as *Matter of T*, 6 I. & N. Dec. 410, 414 (BIA 1954), a case in which a consideration of fairness led the BIA to employ the Attorney General's permitted discretion and afford the alien *nunc pro tunc* relief. We concluded the section by stating that

> While the availability of this type of relief is unclear, we are hesitant to find the Board is without such authority since it could serve an important error-correcting function. For example, if the agency were at fault in delaying Ramirez-Canales's application for adjustment of status until after the date at which he was required to leave the country, the Board could use *nunc pro tunc* authority to grant relief. Because neither the Board nor the immigration judge addressed the availability of this type of *nunc pro tunc* relief, we remand the case for a determination of whether the Board may retroactively grant Ramirez-Canales's application for adjustment of status.

*Ramirez-Canales* I, 517 F.3d at 911.

After remand, the BIA issued a brief decision, reiterating its lack of discretion to allow the petitioner to "reapply for admission after being deported and subsequently reentering the country." The BIA cited *Matter of Torres-Garcia*, 23 I. & N. Dec. 866, 875 (BIA 2006), in which it determined that 8 U.S.C. § 1182(a)(9)(C)(ii) left the Attorney General with no discretion to grant a waiver of § 1182(a)(9)(C)(i) inadmissibility—"either retroactively or prospectively, prior to the end of this 10-year period." The BIA acknowledged our suggestion in *Ramirez-Canales I*, that *nunc pro tunc* relief could essentially *erase* the violation, and stated that it would "decline such a broad exercise of our discretionary powers." It then supported its decision by describing how Congress had specifically enumerated permissible waivers, in §§ 1182(a)(9)(C)(ii) and (iii) (providing exceptions for

aliens seeking admission more than 10 years after the alien's last departure from the United

States and for certain victims of battering or cruelty). The BIA concluded it was without

authority to "fashion" a new waiver by allowing the requested relief, noting that even if

petitioner were considered a "returning resident" when he reentered the United States, he

would still be left inadmissible under § 1182(a)(9)(C)(i)(I), as he reentered without

admission.[4]

The power of the BIA to correct errors through the issuance of *nunc pro tunc* relief

was explored by the Eighth Circuit in the recent case of *Hernandez v. Holder*, 579 F.3d 864

(8th Cir. 2009). In *Hernandez*, the alien—a citizen of Guatemala—asserted that he was

entitled to a grant of asylum *nunc pro tunc*, in part due to extreme agency delay. The Eighth

Circuit considered cases including that of *Edwards v. INS*, 393 F.3d 299, 308-09 (2d Cir.

2004), where the Second Circuit granted *nunc pro tunc* relief to aliens deprived of the

opportunity to apply for relief under former § 212(c) of the INA due to agency error.

*Edwards* stated the purpose of the error-correcting *nunc pro tunc* doctrine was "to return

aliens to the position in which they would have been, but for a significant error in their

immigration proceedings." *Id.* at 309. In determining that the petitioner was not eligible for

*nunc pro tunc* relief, the *Hernandez* court distinguished *Edwards* and other similar cases,

pointing out that the petitioners in those cases sought a wrongly withheld opportunity to

*apply* for deportation relief, as opposed to the *grant* of asylum sought by Hernandez.

Emphasizing the speculative nature of Hernandez's request, the Eighth Circuit held that *nunc*

---

[4]The BIA noted that the petitioner had "presented some sympathetic factors in his case," including his family in the United States as well as the recent *Dada* decision.

*pro tunc* relief was not appropriate, as "any argument that Hernandez would have ultimately received a grant of asylum is speculative because, as the BIA observed, Hernandez 'has never benefitted from a final order determining that he fully met the standards for eligibility for asylum.'" *Hernandez*, 579 F.3d at 873.

This case is also distinguishable from *Edwards*, in that petitioner would not have been admissible "but for" agency error. The BIA's determination centered on petitioner's illegal reentry, which occurred after the alleged agency error, and which the BIA found it could not ignore. The *Edwards* court itself stated the principle that "[a] court may not award equitable relief in contravention of the expressed intent of Congress." *Edwards*, 393 F.3d at 309 (citing *INS v. Pangilinan*, 486 U.S. 875, 883-85 (1988)). Although petitioner asserts that the BIA has found no statutory bar to *nunc pro tunc* relief in this case, the decision of the BIA was actually grounded in its interpretation of § 212(a)(9)(C)(i)(I) of the INA, or 8 U.S.C. § 1182(a)(9)(C)(i)(I), not to allow any sort of waiver or "undoing" of a recidivist's unlawful reentry. In line with *Ramirez-Canales I*, we find the agency's determination that it lacks the discretion available in *Edwards* to grant the requested *nunc pro tunc* relief to be a reasonable interpretation of the INA. Despite the brief decision of the BIA after remand, we are now satisfied that the BIA considered the possibility of the "error correcting" function of *nunc pro tunc* relief as applicable to this petitioner and reasonably determined it is not consistent with the petitioner's statutory inadmissibility in the instant case.

Accordingly, the petition for review is **DENIED**.